## A94A1967. SACKER v. PERRY REALTY SERVICES, INC. et al.
(457 SE2d 208)

JOHNSON, Judge.

Sandra Sacker filed this action against Perry Realty Services, Inc., and D'Youville Condominium Association, Inc., for injuries sustained when she fell while walking through the parking lot of the condominium where she resides. Perry Realty and D'Youville moved for summary judgment, which the trial court granted. Sacker appeals.

Sacker contends the trial court erred in granting the defendants' motions for summary judgment because genuine issues of material fact exist as to whether Perry Realty, as agent for D'Youville, was negligent in maintaining the parking area. We agree and reverse.

Viewed in the light most favorable to Sacker as the respondent in a motion for summary judgment, the evidence shows Sacker owns and resides in a condominium unit at D'Youville Condominium. Sacker normally parked her car in the garage behind her unit and her husband parked his vehicle in the parking lot in front of the unit. One evening Sacker went to retrieve a case of soft drinks from her husband's car. The lighting in the parking area was poor and Sacker was unable to see the ground. As Sacker carried the drinks, she tripped over a railroad tie, fell over a retaining wall and was injured. The railroad ties were used as parking space indicators. The tie Sacker tripped over was out of place at the time of the accident. Sacker knew prior to the accident that the lighting in the area was poor, but she had never seen the railroad ties out of place.

The condominium association retained Perry Realty to manage the property. Robert Powser, Perry Realty's on-site manager, was responsible for inspecting and supervising maintenance of common areas at D'Youville. As part of his duties, Powser visited the property two days each week. He admitted on deposition that the railroad ties were not secured and that he regularly found them out of place. Powser and the landscaping crew repositioned the ties about four to six times each week. Powser also admitted that the day after the fall he found the tie which was located in front of Sacker's unit to be out of place. In addition, Powser testified that the lighting in the parking lot was "not . . . superior to the new pink lights," that there were shadows in the parking lot, and that he wanted to upgrade the lights for "looks" and for "better lighting." Powser deposed that he only learned about any lighting problem after the accident, though he visited the complex one night each month.

Sacker argues that because she owns a condominium at D'Youville, she was an invitee of the common area rather than a mere

licensee as Perry Realty claims.[1] "Whether a person is an invitee or licensee depends upon the nature of his relation or contact with the owner of the premises. . . . If the relationship is one of mutual interest to the parties, the injured party is an invitee of the owner. The enterprise must be mutual to the extent that each party is lawfully interested therein; or that there is common interest or mutual advantage involved." (Citations and punctuation omitted.) *Walker v. Daniels*, 200 Ga. App. 150, 154 (1) (407 SE2d 70) (1991). As is evident from the Declaration of Condominium, there exists a clear mutuality of obligations and interests between Sacker and D'Youville. Sacker was therefore an invitee. D'Youville therefore had a duty to exercise ordinary care to protect her from unreasonable risks of which it had superior knowledge. See *Shansab v. Homart Dev. Co.*, 205 Ga. App. 448, 450 (3) (422 SE2d 305) (1992).

In this case, the property manager for the condominium association was on notice that the railroad ties were not secured and regularly became displaced, yet the only action he took was to move them back into position when he noticed them out of place and to inform the landscaping crew to do the same. Sacker's testimony that she had never noticed the ties out of place and that the darkness prevented her from seeing the displaced tie was uncontradicted. "The question of a violation of the duty to exercise ordinary care to afford [invitees] premises that are reasonably safe . . . is a question of negligence and this court is bound by the rule that such matters are for the jury except in plain, palpable and indisputable cases." (Punctuation omitted.) *Robinson v. Western Intl. Hotels Co.*, 170 Ga. App. 812, 813 (1) (318 SE2d 235) (1984). The evidence in this case, considering the reasonable inferences that may be drawn therefrom, presents matters which should be resolved by the jury. See *Waits v. Makowski*, 191 Ga. App. 794, 796 (1) (383 SE2d 175) (1989). A genuine issue of material fact exists as to whether Perry Realty and D'Youville were negligent in maintaining unsecured railroad ties in a dimly lit parking area. See id. at 814 (1).

Perry Realty's argument that Sacker successfully negotiated the condition for 11 years and therefore knew of the danger is without merit. It is true that a person who has successfully negotiated a dangerous condition on a previous occasion is presumed to have knowledge of it and cannot recover for resulting injuries. *Steinberger v. Barwick Pharmacy*, 213 Ga. App. 122, 125 (1) (444 SE2d 341) (1994). However, there is no evidence Sacker ever negotiated this particular hazard. Her testimony was that she did not regularly use the front

---

[1] We note that Sacker is not precluded from bringing a negligence action against the association by virtue of her ownership of an interest in the common area or by her membership in the association. See OCGA § 44-3-106 (g).

parking area and had never seen the railroad ties out of place. Therefore, the fact that she managed to avoid tripping over the ties when they were properly positioned or during daylight hours does not mean she had knowledge of or had successfully negotiated the dangerous condition which caused her to fall that night. "It is a plaintiff's knowledge of the *specific* hazard which precipitates the slip and fall which is determinative, not merely his knowledge of the generally prevailing hazardous conditions or of the hazardous conditions which he observes and avoids." (Punctuation omitted; emphasis in original.) *Lindsey v. J. H. Harvey Co.*, 213 Ga. App. 659, 660 (445 SE2d 810) (1994). Sacker knew there were railroad ties in the area but not that they were out of place, a dangerous condition exacerbated by the poor lighting.

Contrary to Perry Realty's argument, there is evidence that Sacker exercised ordinary care. Sacker testified that she was looking where she was going, including toward the ground, but that darkness prevented her from seeing the ground in front of her. The evidence created a factual issue as to whether Sacker exercised reasonable care and whether Perry Realty exercised ordinary care in making the premises safe for its invitees. See *Burke v. Bi-Lo*, 212 Ga. App. 115, 116 (441 SE2d 429) (1994). In moving for summary judgment, Perry Realty had the burden of showing that no genuine issue of material fact existed as to its lack of superior knowledge of the danger created by the railroad ties. Id. at 118. We cannot decide that Sacker had equal knowledge of the hazard as a matter of law. Therefore, the trial court erred in granting Perry Realty's and D'Youville's motions for summary judgment.

Finally, we do not agree with D'Youville's assertion that summary judgment in its favor was mandated because Perry Realty was an independent contractor. Even assuming Perry Realty is an independent contractor, D'Youville would not necessarily be relieved of all liability to Sacker. "To the general rule of the employer's nonliability for the torts of independent contractors codified in OCGA § 51-2-4, there are several exceptions. One of those exceptions, codified in OCGA § 51-2-5 (3), is where the wrongful act is the violation of a duty imposed by express contract upon the employer; for where a person contracts to do a certain thing, he cannot evade liability by employing another to do that which he has agreed to perform." (Citations and punctuation omitted.) *Crispens Enterprise v. Halstead*, 209 Ga. App. 133, 134 (2) (433 SE2d 353) (1993). In the Declaration of Condominium, D'Youville is expressly obligated to maintain and keep the common areas in good repair. See generally *Fleetwood v. Wieuca North Condo. Assn.*, 182 Ga. App. 15, 16 (1) (354 SE2d 623) (1987). Sacker has an independent obligation to pay fees which enable the association to perform those services. D'Youville may not escape lia-

bility by arguing that the company it employed to perform its obligations was an independent contractor.

*Judgment reversed. Beasley, C. J., McMurray, P. J., Blackburn and Ruffin, JJ., concur. Birdsong, P. J., Pope, P. J., and Andrews, J., dissent. Smith, J., not participating.*

ANDREWS, Judge, dissenting.

I respectfully dissent.

Sacker deposed that she walked out of her condominium to retrieve a case of soft drinks from her husband's car, which was located in the condominium parking lot. It was about 7:00 p.m. at the time and was dark outside. The parking lot in front of her condominium was elevated about five to six feet above the ground level of the condominium, and was separated from the condominium by a five to six foot high retaining wall. The top of the retaining wall was roughly at the level of the parking lot. The parking lot was designed so that cars were parked in spaces close to the edge of and directly facing the retaining wall. Photographs identified by Sacker and attached as exhibits to her deposition show that, on the night of the fall, Sacker's husband's car was parked directly in front of the retaining wall with the front bumper of the car even with or hanging slightly over the top of the retaining wall.

Railroad ties were periodically placed parallel to the retaining wall to act as parking space indicators. The photographs show that the railroad tie in front of her husband's car was slanted away from the retaining wall toward the driver's side of the car. Sacker testified that, although it was too dark for her to see the railroad tie when she tripped over it, she assumed that the photographs showed the approximate position of the tie on the night she tripped and fell. She made this assumption on the basis that, "when [she] ran into the tie, [she] was farther away from the wall than [she] should have been." She testified that, after she picked up the case of soft drinks from the backseat of the car, she walked along the driver's side of the car toward the retaining wall and tripped over the tie. Based on the position of the railroad tie in the photographs and Sacker's testimony, it is evident that she encountered the tie about one step away from the top of the retaining wall. Sacker testified that, having walked in that area of the parking lot about once a week for 11 years, she knew that the railroad ties were there and that they were normally placed "[p]robably 4 to 6 inches or something like that" away from and parallel to the retaining wall. Although there was evidence that the railroad ties were not affixed to the ground and occasionally were found out of position, Sacker testified that she had never before seen a tie slanted out of position away from the wall. Sacker testified that, on the night she fell, she did not "remember consciously looking for the

tie because I knew where they were, I thought." In explaining the manner in which she tripped and fell Sacker testified that: "I walked toward the wall and hit the railroad tie and went flying, landed on the wall on my knee . . . [f]ainted and rolled off the wall onto the ground 5 feet or 6 feet below."

Sacker testified that there was a parking lot light in the area of her husband's car that illuminated the parking lot and gave her sufficient light to walk up the steps leading from the condominiums to the elevated parking lot area. Although the photographs attached to her deposition do not reflect it, Sacker testified that, on the night of her fall, another car was parked alongside the driver's side of her husband's car. When she got to the top of the steps, she walked around the car parked adjacent to her husband's car, then walked between the two cars "to the rear door of my husband's car, opened it, lifted out the case of drinks, closed the door, and walked toward the wall." Instead of walking back into the lighted parking lot area to the rear of the car and around the adjacent car to the lighted steps, Sacker walked in the narrow corridor between the two cars, carrying the case of soft drinks, toward the edge of the six-foot drop-off at the retaining wall. She did so with the intention of placing the soft drinks on the top of the wall so that her husband, waiting in front of the condominium, could reach them from below the wall and carry them inside. Sacker did not testify that the parking lot area in general was inadequately lighted for walking in at night. Rather, she testified that the car parked immediately adjacent to her husband's car blocked the light in the parking lot from shining into the narrow corridor in which she walked between the two parked cars. She testified that when she looked down in the narrow corridor between the cars it was so dark that she could not see the tie or even where she was putting her feet on the ground as she walked toward the retaining wall.

Powser, the property manager for the defendants, testified on deposition that he inspected the parking lot area twice a week on Mondays and Thursdays, and during those inspections specifically checked for and re-positioned any railroad ties that were out of place. He testified that he would typically find four to six ties out of place in various areas of the 40-acre condominium property during each inspection. He observed that the tie over which Sacker tripped was slanted about six inches out of position the day after the fall. Powser's undisputed testimony was that no one prior to Sacker had ever tripped or fallen over one of the railroad ties.

Powser testified that, since the present lawsuit had been filed, the lights, which were leased from Georgia Power, had been discussed, but that Georgia Power had refused to upgrade all the lights in the complex from white lights to the new, more energy efficient pink or peach colored lights. Powser did testify that there were shadows in

the parking lot, but nothing he considered unusual. There was no testimony that the lights in the parking lot were inadequate.

Based on these facts, the defendant proprietors were entitled to summary judgment.

1. There was no evidence that the defendants had superior actual or constructive knowledge of the defects alleged to be the proximate cause of Sacker's injuries. The basis for imposing liability in this case is the proprietors' superior knowledge of a condition or hazard that was the proximate cause of Sacker's injuries. *Pound v. Augusta Nat.*, 158 Ga. App. 166, 167-168 (279 SE2d 342) (1981). Sacker alleges that there were two conditions or hazards working in combination: the out-of-position railroad tie and the absence of lighting in the corridor between the adjacent parked cars.

The existence of darkness on the ground at night in the narrow space between two adjacent parked cars in an otherwise lighted parking lot is not a defect, but a condition which is commonly encountered and to be anticipated by those exercising ordinary care for their own safety. In any event, Sacker was at least equally aware of the darkness between the cars.

As to the out-of-position tie, assuming this was a condition which exposed Sacker to an unreasonable risk of harm, in order to recover, Sacker would be required to show that the defendants had superior actual or constructive knowledge that the tie at issue was out of place. There was no evidence that the defendants had any actual knowledge that the tie at issue was out of place. As to proof of constructive knowledge, "[i]n general, there are two classes of cases supporting claims that a defendant had constructive knowledge of a defect. The first class involves a claim that the defendant had a duty to exercise reasonable care to inspect and keep the premises safe and that the defect had existed for a sufficient period of time to afford the defendant a reasonable opportunity to conduct such an inspection and discover and remove the defect. The second class . . . involves a claim that an employee of the defendant was in the immediate area of the hazard and had the means and opportunity to have easily seen and removed the hazard. *Banks v. Colonial Stores*, 117 Ga. App. 581, 584-585 (161 SE2d 366) (1968); *Mitchell v. Food Giant*, 176 Ga. App. 705, 708-709 (337 SE2d 353) (1985)." *Lonard v. Cooper & Sugrue Properties*, 214 Ga. App. 862, 863-864 (449 SE2d 348) (1994).

There was no evidence that an employee of the defendants was in the area and had the means and opportunity to have seen the out-of-position tie and re-position it. As to any claim that the defendants had constructive knowledge because they failed to exercise reasonable care in inspecting the premises to keep it safe, to sustain such a claim it is necessary to present evidence showing the period of time the tie was out of place. *Colevins v. Federated Dept. Stores*, 213 Ga. App. 49,

51 (443 SE2d 871) (1994). There was no evidence as to the period of time the tie had been out of place. "Without such proof it would not be possible to determine whether the defendant had been afforded a reasonable time within which to inspect and remove the hazard." (Emphasis omitted.) Id. Although there was evidence that the defendants had previously found ties out of position, that does not create a duty on the part of the defendants to provide a constant patrol to prevent a tie from moving out of position, especially where there had been no previous trips or falls involving an out-of-position tie. *Elliott v. Burkhalter*, 173 Ga. App. 749 (327 SE2d 858) (1985). "Where there are no conditions making the premises unusually dangerous, the law does not require the proprietor to provide a constant patrol." (Punctuation omitted.) Id. The evidence showed that, under the circumstances, the defendants adhered to a reasonable schedule of inspecting the premises.

In the absence of any evidence that the defendants had superior actual or constructive knowledge that the tie was out of position, the trial court properly granted summary judgment in favor of the defendants. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

2. Even if it could be concluded that the defendants had knowledge of the out-of-position tie, they were still entitled to summary judgment in this case.

"The owner or occupier of land is liable in damages to invitees for injuries occasioned by his failure to exercise ordinary care in keeping the premises and approaches safe. [OCGA § 51-3-1.] However, the [proprietor] is not an insurer of the safety of his [invitees], but what the law requires is such diligence toward making the premises safe as the ordinarily prudent businessman in such matters is accustomed to use. *Emory University v. Williams*, 127 Ga. App. 881 (195 SE2d 464)." *Winn-Dixie Stores v. Hardy*, 138 Ga. App. 342, 344 (226 SE2d 142) (1976). "This includes a duty to inspect the premises to discover possible dangerous conditions of which he does not know and to take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement and use of the premises. The true ground of liability in such a relationship is the superior knowledge of the proprietor of the existence of a condition that may subject the invitee to an unreasonable risk of harm." (Citations and punctuation omitted.) *Barksdale v. Nuwar*, 203 Ga. App. 184, 185 (416 SE2d 546) (1992).

The facts in this case show that the railroad ties, apparently when bumped by cars parking at the edge of the six-foot high retaining wall, would occasionally move out of position by slanting in one direction or another away from the wall. As the photographs attached to Sacker's deposition show, this condition posed no hazard to anyone getting into or out of the front or back seat of a parked car, even at

night, as long as they entered and exited, as would be expected, in the normal path past the rear of the car through the lighted parking lot area. In fact, no one prior to Sacker had ever been injured by an out-of-position tie. The only way to encounter a railroad tie in this area, even one slanted out of position, is to walk past the front door of the car toward the edge of the six-foot-high precipice. Sacker did precisely this when she deviated from the path normally taken to enter and exit the car to walk in an obviously darkened corridor between two cars to the edge of the wall so that she could place the case of soft drinks on top of the wall. Even if the defendants had knowledge of the alleged hazardous conditions, it was not foreseeable that these conditions would cause injury to an invitee. Accordingly, these were not conditions which exposed an invitee to a *foreseeable unreasonable risk of harm.* See *Barksdale,* supra; *Shackelford v. DeKalb Farmer's Market,* 180 Ga. App. 348, 349-350 (349 SE2d 241) (1986).

Moreover, while walking in the dark, in an area where she knew she was approaching the railroad tie and the edge of the wall, it was Sacker's duty to anticipate the presence of the tie, which she encountered only about one step prior to where she thought it would be. See *Jones v. Richardson,* 178 Ga. App. 49 (342 SE2d 12) (1986). "This would be especially true where, as here, the parking lot user elected to follow what was her own 'short cut' rather than to avail herself of a usual and available route for exit." Id. Under these circumstances, this case is more properly in the category with those cases where the obstructions encountered by the plaintiffs while walking in darkness were non-defective obstructions which the plaintiff knew about or should have reasonably anticipated. "It is an act of negligence to go on and over premises where it is to be reasonably expected that obstructions incident to a business activity exist and are concealed by darkness. In such circumstances, one who chooses to walk in the darkness does not exercise ordinary care for his own safety." (Citations and punctuation omitted.) *Meriwether Mem. Hosp. Auth. v. Gresham,* 202 Ga. App. 535, 537 (414 SE2d 694) (1992); *Braun v. Wright,* 100 Ga. App. 295, 296 (111 SE2d 100) (1959); compare *Kreiss v. Allatoona Landing,* 108 Ga. App. 427, 431-435 (133 SE2d 602) (1963) and *Hatcher v. City of Albany,* 147 Ga. App. 843, 846 (250 SE2d 537) (1978) (discussing liability where plaintiffs walking in darkness encountered dangerous or defective conditions on the premises).

Since the facts of this case show plainly and indisputably that the defendants have discharged their duty of ordinary care to Sacker, and that Sacker failed to exercise ordinary care for her own safety, the trial court properly granted summary judgment for the defendants.

I am authorized to state that Presiding Judge Birdsong and Pre-

siding Judge Pope join in this dissent.

DECIDED MARCH 31, 1995 —
RECONSIDERATION DENIED APRIL 20, 1995 —

*David C. Cole, Ford & Felton, James L. Ford, Terry D. Jackson*, for appellant.

*Swift, Currie, McGhee & Hiers, Robin F. Clark, Stephen L. Cotter, Chambers, Mabry, McClelland & Brooks, W. C. Brooks*, for appellees.