A96A0745. CAREY v. W. R. GRACE & COMPANY, CONN.
(472 SE2d 524)

BIRDSONG, Presiding Judge.

Appellant/plaintiff Ransom D. Carey, Sr. appeals from the order of the superior court granting summary judgment to appellee/defendant W. R. Grace & Company, Conn. (Grace Company).

This is a negligence suit for damages. Appellant, a truck driver, drove to appellee Grace Company's premises to pick up a load of drums to be transported for appellee. Upon completion of the loading, appellant was requested by a Grace Company employee (employee) to assist in moving a heavy steel dock plate, which had been used as a ramp between the dock and the truck, off the back of appellant's truck so it could exit the premises. It was averred in the complaint that the employee had superior knowledge of the conditions of the loading dock area, that he supervised and directed appellant as to his direction and movement (as the latter was unable to turn to see behind him as he was holding the dock plate), and that the employee did negligently direct appellant into a wooden pallet or pallets causing him to fall backwards and to be struck by the dock plate. Appellant fell over either a 48-inch by 48-inch by 2-inch or 3-inch single pallet or a pair of stacked pallets. *Held*:

1. The applicable summary judgment standard is that of *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474). "In ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion." *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 596 (370 SE2d 843).

2. Appellant testified by way of deposition that as he watched his truck being loaded, "the pallets were being left at the same position, the same place [as] the other driver was bringing them"; so there was one large stack of pallets. Appellant subsequently testified that he understood there was a specific place designated for pallets, and that "all the other pallets that we were working with were moved to a specific area," but the pallet he tripped on had not been moved from the walkway to the designated area thereby causing him to fall. Appellant's testimony is inconsistent regarding whether, within his knowledge, the other pallets had been moved to a designated area or just left in a stack in the immediate vicinity of the loading operation. As no reasonable explanation has been offered for this inconsistency, we will apply the rule of *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) to the inconsistent evidence. Compare *Papera v. TOC Retail*, 218 Ga. App. 777 (2) (463 SE2d 61).

3. Appellant gave uncontroverted deposition testimony that he watched the Grace Company employee load barrels from pallets onto the truck; the employee would pick up a barrel with his forklift, drive the forklift into the truck and unload the barrel. After the barrels were loaded, the pallets were left in their original position, resulting in one stack of pallets. The employee parked his vehicle and asked if appellant would help him move the dock plate, and appellant agreed to do so. Appellant grasped an end of the dock plate and asked, "Where do you want to go with it?" The employee replied, "Let's put it over behind you" or "Let's go behind you there." Appellant initially "just stood to wait upon [the employee] . . . and [appellant] totally relied upon whatever [the employee] wanted to do because [appellant] didn't know what he wanted to do." The employee chose the route to be taken with the dock plate. Appellant further testified he totally relied upon the employee because he did not know where to go, what to do, how to do it, where the safety zones were located on the premises, or where he was or was not supposed to walk. He "assumed" the employee "knew what he wanted to do" and "had appraised the entire area and [determined] everything was safe." However in a handwritten statement of appellant made prior to and attached to his deposition as Defense Exhibit No. 3, appellant stated that he "fell backwards and [the] dock plate fell on top of me before Jim [the employee] or myself realized they [the two stacked pallets] were setting on the platform." Appellant looked behind him before moving backwards "to see if there was a clearance, to see if nothing was there in [his] path"; he "obviously looked around to make sure [he] wouldn't run into anything." He looked over his right shoulder and saw nothing in view; he did not look over his left shoulder. Appellant then took two or three steps backwards and tripped on either a single pallet or, more likely, two stacked pallets. After falling appel-

lant could see the pallet sitting in plain view. Although he was unaware when this pallet was placed in the work area, it was placed in the work area after he had parked his truck. The pallet was approximately two or three feet from where appellant was standing when he watched his truck being loaded; there was no other loading activity occurring in the area at the time. Appellant admitted that if a need had existed for him to turn around and look in the direction of the pallet before he moved backwards, he would have been able to see it.

During the course of picking up the dock plate and moving backwards with it, appellant and the employee were engaged in a brief, voluntary conversation in which appellant asked "questions about the kinds of material that [the employee] had placed on the trailer and what would be the types of placards that would [be needed] to accommodate this load." All of this was happening during the movement of the dock plate; the employee was talking to appellant and vice versa; it was just spontaneous. Immediately after the incident appellant never said anything to the employee to the effect of "why weren't you watching out for me." At no time prior to the incident had the employee "said that he would keep an eye out for any obstructions behind" appellant, or "don't look behind you." Appellant did look behind himself before moving.

(a) By appellant's own testimony the pallets were visible in the loading area, and no evidence exists from which a reasonable inference could be drawn that the pallets had been concealed in any manner. "The pallets clearly were visible and posed no latent danger. 'The duty to warn extends only to a latent danger — not to an open or obvious one.'" *Lee v. Peacock*, 199 Ga. App. 192, 194 (3) (404 SE2d 473). Further, appellant "'was under a duty to use (his) sight to discover any defects or dangers.'" Id. at 195. Although appellant, by his own written statement, has acknowledged that appellee's employee was not aware of the location of the pallet until appellant fell, we need not reach that issue. Suffice it to say, the pallet was open and obvious and appellee had no duty to warn.

Further, appellant admitted that if he had perceived a need to turn around and look behind him before the incident, he would have seen the pallet or pallets behind him. Yet, appellant also testified that, before proceeding backwards, he "obviously looked around to make sure [he] wouldn't run into anything." Assuming without deciding that this testimony is not in conflict with appellant's testimony that he was relying entirely upon the employee for direction, it clearly demonstrates appellant's awareness of the need to look out for his own safety before proceeding. Yet, appellant failed to turn around and look at his path before lifting the dock plate and proceeding backwards. "Because [appellant] did not exercise due care for [his] own safety we hold . . . that 'this is a plain, palpable, and indisputa-

ble case not calling for resolution by a jury.'" *Edwards v. Wal-Mart Stores*, 215 Ga. App. 336, 338 (449 SE2d 613); compare *Vermont American Corp. v. Day*, 217 Ga. App. 65 (456 SE2d 618).

(b) Appellant's reliance on *Pique v. Lee*, 218 Ga. App. 357 (461 SE2d 302) is misplaced as the facts of this case are distinguishable; the beauty chair in *Pique* had a defect not open and obvious in nature, that is, the locking device of the hair salon chair was not activated, notwithstanding a contrary business custom, before the patron was ushered to the chair by a salon employee. Likewise distinguishable is *Stephens v. Ernie's Steakhouse &c.*, 215 Ga. App. 166 (450 SE2d 275) where the peril caused by the painted surface was not discoverable by the plaintiff. The pallets in the case at bar were open and obvious.

(c) For the reasons addressed in Division 3 (a), to the extent appellant/plaintiff's complaint averred that injury was sustained due to the active negligence (see generally *Lipham v. Federated Dept. Stores*, 263 Ga. 865 (440 SE2d 193); *Wade v. Mitchell*, 206 Ga. App. 265 (424 SE2d 810)) of appellee's employee in failing to safely direct appellant's backward movement, we also are satisfied that the trial court did not err in granting summary judgment to appellee. Additionally, any evidence offered by appellant to establish the employee had superior knowledge of the danger posed by the pallet would be inconsistent with appellant's written statement expressly asserting that at the time of his fall neither he *nor* the employee was aware the pallets were on the loading platform.

*Judgment affirmed. Andrews, Johnson, Blackburn and Smith, JJ., concur. Beasley, C. J., McMurray, P. J., Pope, P. J., and Ruffin, J., dissent.*

BEASLEY, Chief Judge, dissenting.

I respectfully dissent. There are issues of fact to be decided by a jury with respect to whether, for one thing, the premises owner exercised ordinary care, as required by OCGA § 51-3-1, in keeping the premises safe for the person whose movement its employee directed and controlled at the time he fell. The duty is owed to workers who have been hired to work on the premises, as plaintiff was. *Howell v. Farmers Peanut Market of Sowega*, 212 Ga. App. 610, 611 (1) (442 SE2d 904) (1994).

The primary legal issue on the motion for summary judgment is whether the evidence, construed most favorably for plaintiff Carey, demonstrates as a matter of law that he did not have knowledge superior or equal to that of defendant's employee Broomall of the pallet or pallets on which he fell. *Shansab v. Homart Dev. Co.*, 205 Ga. App. 448, 451 (3) (422 SE2d 305) (1992), citing *Telligman v. Monumental Properties*, 161 Ga. App. 13 (288 SE2d 846) (1982).

This case differs from that of the usual slip/trip and fall case in at least two significant factors: plaintiff was moving backward, not forward, and his movement was directed and controlled at the time by defendant's employee, who had the other end of the heavy dock plate. The relative knowledge and opportunity of Carey and Broomall does not establish as a matter of law that Carey's was equal to or superior to Broomall's. The "plain view" cases cited in the majority opinion involve situations where plaintiff was walking forward and thus could be expected to watch as he walked. See, e.g., *Lee v. Peacock*, 199 Ga. App. 192 (404 SE2d 473) (1991); *Edwards v. Wal-Mart Stores*, 215 Ga. App. 336 (449 SE2d 613) (1994). Even where plaintiff is facing forward, "The mere fact that [plaintiff] was not looking ahead does not demand a finding that [plaintiff] was not exercising ordinary care for [his] own safety. Looking continuously, without intermission, for defects in a floor is not required in all circumstances. (Cits.) What is a 'reasonable lookout' depends on all the circumstances at the time and place. (Cit.) [Cits.]" (Punctuation omitted.) *Food Giant v. Cooke*, 186 Ga. App. 253, 257 (2) (366 SE2d 781) (1988).

During the loading process, there was nothing to put Carey on notice to become particularly aware of where pallets were or had been put, as he could not have anticipated that he would be asked for gratuitous help in moving a heavy item. Broomall, on the other hand, was already familiar with the premises and with the placement of pallets during the course of operations. When Broomall asked for Carey's help and Carey obliged, Broomall supervised the relocation process and took over the direction of Carey's movement, obviously with knowledge that Carey could not see where he was going but that Broomall could because Broomall directed his movement backward. He, not Carey, controlled where Carey walked at that moment, because not only did Carey rely on him for guidance, but Broomall was steering the movement of them both as they grasped the object.

Carey's description of the incident, in which he testified that neither one of them "realized" the pallets were on the platform, creating a hazard in the way chosen by Broomall, does not relieve defendant of superior knowledge; Carey does not say that Broomall's lack of realization was without fault. That Carey may have determined after the incident that Broomall was unaware Carey was moving towards the two pallets has no bearing on whether Carey relied on Broomall at the time to guide him along a safe path. Whether Broomall should have realized the pallets were there, since he had undertaken the responsibility to direct the safe movement of another person who could not see where he was walking as he walked, is a question of the exercise of ordinary care, for the jury.

Broomall was completely familiar with the loading dock and the

procedures and knew that Carey, a visitor, was not; he knew or should have known that Carey was of necessity following his lead because of the position he put Carey in; he knew, and he knew Carey did not know, where the dock plate was to be put; and it is reasonably inferable that he or another Grace Company employee had placed the hazard where it was. It was open and obvious to him but not to Carey, whose eyes were forward, not backward. Broomall put Carey in a position of peril by prevailing upon him to help, and to do so by walking backward so he could not see where he was going. Carey brought forth evidence that defendant's knowledge of the peril was superior, at least constructively, so as to avoid summary judgment. *Minor v. Super Discount Markets*, 211 Ga. App. 123, 124 (438 SE2d 384) (1993).

He also presented evidence that he was exercising ordinary care for his own safety in this injury-producing maneuver. *Alterman Foods v. Ligon*, 246 Ga. 620, 623 (272 SE2d 327) (1980). He did look behind him before they began moving the plate; whether looking over only his right shoulder and not his left constitutes a failure of ordinary care is a jury question; we cannot say as a matter of law that his precautions were deficient, or that his reliance on the path selector was unjustified, or that his failure to see the specific hazard resulted from his own negligence. See *Lindsey v. J. H. Harvey Co.*, 213 Ga. App. 659, 660 (445 SE2d 810) (1994), and *Sacker v. Perry Realty Svcs.*, 217 Ga. App. 300 (457 SE2d 208) (1995), as to knowledge of specific hazard. Whether under OCGA § 51-11-7 he failed to exercise reasonable care to avoid the consequences of defendant's negligent steerage, assuming it was such, is a jury question. *Chotas v. J. P. Allen & Co.*, 113 Ga. App. 731, 733-734 (149 SE2d 527) (1966). Broomall, not he, had control of where they headed; he was the captain of the ship.

In Division 2 of the majority opinion, the rule of *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986), is applied to two portions of Carey's deposition testimony. He first says that as he watched his truck being loaded, "the pallets were being left at the same position, the same place [as] the other driver was bringing them"; so there was one large stack of pallets. Carey subsequently testified that he understood there was a specific place designated for pallets, and that "all the other pallets that we were working with were moved to a specific area," but the pallet he tripped on had not been moved from the walkway to the designated area thereby causing him to fall. This testimony is not inconsistent. In both instances, Carey says the pallets are stacked in one place. In the later testimony, he just adds that the one he tripped over had not been stacked with the others.

Even if the testimony were inconsistent, it is not dispositive.

Both parties acknowledge that Carey fell backwards over one or two pallets that had not been stacked with the others, and "only in cases where there is a direct contradiction in the testimony of the respondent as to a material issue of fact will that party's unfavorable testimony be taken against him." *Tri-Cities Hosp. Auth. v. Sheats*, 247 Ga. 713, 714 (279 SE2d 210) (1981).

This case, like *Wade v. Mitchell*, 206 Ga. App. 265 (424 SE2d 810) (1992), does not involve merely a pre-existing defect on the premises but rather the active performance of acts and omissions which occurred after he arrived there. As recognized in that case, the Supreme Court in *Trammell v. Baird*, 262 Ga. 124, 126 (413 SE2d 445) (1992), reaffirmed a legal distinction, in premises liability cases, between those where the alleged negligence arises from static or passive conditions and those where active negligence by act or omission is the basis. The cases involving pre-existing premises defects are not controlling. *Wade*, supra at 266. See also *Lipham v. Federated Dept. Stores*, 263 Ga. 865 (440 SE2d 193) (1994) (steering plaintiff to a place where pallets were left on the platform is not lack of negligence per se).

As to plaintiff's reliance on the steering undertaken by defendant's employee Broomall, the case of *Cunningham v. Nat. Svc. Indus.*, 174 Ga. App. 832 (331 SE2d 899) (1985), is analogous. It, too, involved reliance by plaintiff on the direction of another person, and we reversed summary judgment to defendant. We applied the standard view of the function of the jury versus a conclusive application of legal principles, saying: "Questions of negligence, diligence, contributory negligence, and proximate cause are peculiarly matters for the jury, and a court should not take the place of the jury in solving them, except in plain and indisputable cases. *Atlanta Coca-Cola Bottling Co. v. Jones*, 236 Ga. 448 (224 SE2d 25). Added to that list are related issues of assumption of risk, lack of ordinary care for one's safety, lack of ordinary care in failing to foresee a condition which could cause injury [cit.], and even where there is no dispute as to the facts, it is usually for the jury to say whether the conduct in question met the standard of the reasonable man. [Cit.] Unless no other conclusion is permissible, questions of negligence are matters for jury resolution and are not ordinarily susceptible to summary adjudication. [Cit.]" (Punctuation omitted.) Id. at 836.

The plaintiff in that case was entitled to a jury trial, and so is Carey. Here we have not only the duty of a premises owner, but also the duty of one who is the agent of the premises owner who undertakes to direct the movements of a business invitee to the premises. Even where facts in a case " 'are uncontradicted and uncontroverted, where they are such that there is room for difference of opinion between reasonable [persons] as to whether or not negligence should

be inferred, the right to draw the inference is peculiarly within the exclusive province of the jury. [Cits.]' [Cit.]" *Yeager v. Jacobs*, 111 Ga. App. 358 (2) (141 SE2d 837) (1965). As in *Lipham*, supra at 866, so here, the question of whether Broomall acted with ordinary care is one for the jury. The case, in its present evidentiary form, does not warrant summary judgment.

I am authorized to state that Presiding Judge McMurray, Presiding Judge Pope and Judge Ruffin join in this dissent.

DECIDED JUNE 17, 1996 — 

*Fink & Travis, David A. Fink*, for appellant.

*Webb, Carlock, Copeland, Semler & Stair, David F. Root, James R. Doyle II*, for appellee.