[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-10231
Non-Argument Calendar

_____

D.C. Docket No. 5:17-cv-00100-TES

AMANDA JONES,

Plaintiff - Appellant,

versus

WAL-MART STORES EAST LP,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(January 13, 2020)

Before MARTIN, NEWSOM and MARCUS, Circuit Judges.

PER CURIAM:

While pulling an 800-pound pallet filled with food donations through the

receiving area of a Walmart in Macon, Georgia, Amanda Jones tripped over another

pallet and sustained substantial injuries.  She brought this premises liability action

against Walmart, and appeals the district court's order that granted summary judgment to the defendant on two grounds: (1) that she had imputed knowledge of the presence of the pallet over which she tripped; and (2) that she failed to exercise reasonable care as a matter of law.  After careful review, we reverse and remand for further proceedings.

The undisputed facts, for purposes of summary judgment, are these.  On June 10, 2014, the date of her fall, Amanda Jones worked as a driver for the Middle Georgia Food Bank.  Her job was to retrieve donations from various stores in the area.  She had made donation pick-ups at the Macon Walmart at issue two to three times a week for the duration of her tenure with the food bank.  Each time she visited the Macon Walmart there would be boxes loaded on a pallet with approximately two to eight hundred pounds of donations, located in a part of the store's receiving area that typically could not be accessed directly from where she pulled her truck up behind the store.  Her typical route required her to walk from her truck, through part of the receiving area, through a set of double doors into the dairy section of the public store, and then back into the receiving area through a second set of double doors, where she would find the loaded pallet.  She would then use a pallet-jack, which is a wheeled, fork-shaped, hand-drawn device that raises heavy pallets so they can be pulled, to retrace her steps and bring the pallet into her truck.

On the day of her fall, Jones entered the Walmart and retrieved her pallet without incident. However, as she was going through the second set of double doors on her return (that is, back from the dairy section into receiving), moving backwards and accelerating with the pallet-jack, she tripped over another pallet immediately behind the door on her left, and fell, fracturing her coccyx.

According to Jones's deposition, she did not know the pallet was there and did not see it while she was walking through the doors because she was looking over her right shoulder, not her left. Walmart employees testified that the pallet over which she had tripped had been in its location behind the door for at least six hours that day, and Jones conceded that she must have walked past it on her incoming journey to retrieve the pallet. Photos taken by Walmart employees after Jones's fall reveal that the offending pallet had a large, flat box on it, and together, the box and pallet were about a foot above the ground. The pallet lay about four feet behind the threshold of the double doors so that, when swung open, the door cleared it by mere inches.

Jones brought this premises liability action in state court, alleging that Walmart's negligent placement of the pallet behind the door breached the standard of care it owed her as an invitee and caused her injury. She claimed that her fall has resulted in ongoing lower back pain and medical bills exceeding $75,000. Walmart removed the case to United States District Court for the Middle District of Georgia

on the basis of diversity of citizenship.  The question before us on appeal is whether as a matter of Georgia premises liability law the district court was correct to grant summary judgment to Walmart.

We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the party opposing the motion.  Looney v. Moore, 886 F.3d 1058, 1062 (11th Cir. 2018).  Summary judgment is only appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). To determine whether a factual dispute is genuine, we must consider whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Peppers v. Cobb County, 835 F.3d 1289, 1295 (11th Cir. 2016) (quotations omitted).

Under Georgia law, property owners are liable to those induced onto their land "for injuries caused by [their] failure to exercise ordinary care in keeping the premises and approaches safe."  Ga. Code Ann. § 51-3-1.  To prevail on a claim of failure to exercise such care, a plaintiff must show that "(1) the defendant had actual or constructive knowledge of the hazard, and (2) the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the defendant's control."  Bonner v. S. Rest. Grp., Inc., 610 S.E.2d 129, 132 (Ga. Ct. App. 2005).  It is uncontested that Walmart knew of the pallet's position behind the

4

door, so the only issue is whether Jones knew of the hazard (or can have such knowledge imputed to her as a matter of law) or failed to exercise ordinary care.

In granting summary judgment to Walmart, the district court concluded that Jones failed to raise a genuine issue of material fact concerning her knowledge of the presence of the pallet and whether she had exercised reasonable care. First, the district court held that under Georgia's "prior traversal" rule, Jones's walking past the pallet on her way to retrieve the donations gave her imputed knowledge of its presence. Second, it held that by walking backwards through the door, Jones failed to exercise reasonable care, giving Walmart a defense of contributory negligence. We disagree with the district court's conclusion that there were no genuine disputes of material fact as to either of these issues.

Under the "prior traversal" rule, a plaintiff who has successfully traversed a readily discernable static condition is deemed to have imputed knowledge of the condition. See Newell v. Great Atl. & Pac. Tea Co., Inc., 476 S.E.2d 631, 633 (Ga. Ct. App. 1996). For this principle to apply, the (1) the condition must have been static; (2) it must have been "readily discernable"; and (3) the plaintiff must have "successfully traversed" it prior to her fall. See id.

"A static condition is one that does not change and is dangerous only if someone fails to see it and walks into it." Rentz, 797 S.E.2d at 257 (quoting LeCroy v. Bragg, 739 S.E.2d 1 (Ga. Ct. App. 2013)). A condition can be static even if

5

capable of movement, so long as it does not in fact move.  See id. (corn hole game at car dealership a static condition); Roweland v. Murphy Oil USA, 634 S.E.2d 477, 479 (Ga. Ct. App. 2006) (metal signs at gas station static conditions).  Since it's undisputed that the pallet was in place for six hours and did not move for the duration of Jones's visit, the district court properly concluded that it was a static condition.

However, our review of the record suggests that there are genuine disputes of material fact as to whether the pallet was "readily discernible."  To be readily discernible, a static condition must be "open and obvious," Becton v. Tire King of North Columbus, Inc., 539 S.E.2d 551, 553 (Ga. Ct. App. 2000), and "in plain view with nothing obstructing . . . view of it," Rentz, 797 S.E.2d at 257.

Although Jones has conceded that the pallet must have been visible when she walked past it the first time, Georgia courts have held that a hazard's being visible is not necessarily enough to render it "readily discernible."  See, e.g., Cocklin v. JC Penney Corp., 674 S.E.2d 48, 50 (Ga. Ct. App. 2009) (reversing grant of summary judgment where the danger of tripping posed by a transition between two types of flooring was visible but not obvious and where plaintiff had successfully traversed the transition "at least four or five times before"); Moore v. WVL Restaurant, 566 S.E.2d 465, 467 (Ga. Ct. App. 2002) (reversing grant of summary judgment to defendant where ice on the ground "may have been difficult to see" even though the plaintiff indisputably walked by it once); Freyer v. Silver, 507 S.E.2d 7, 10 (Ga. Ct.

App. 1998) (holding that defendants were not entitled to summary judgment where "the photographic evidence indicates the color contrast between the level black pavement and the precipitously steeply sloping concrete . . . is not so stark as defendants insist").

Moreover, in general, Georgia law reserves to the jury questions about where "customers should be held responsible for looking or not looking," American Multi-Cinema, Inc. v. Brown, 679 S.E.2d 25, 28 (Ga. 2009), and summary judgment on this ground should only be granted where the record evidence of a static condition's being open and obvious is "plain, palpable, and undisputed," Robinson v. Kroger, 493 S.E.2d 403, 414 (Ga. 1997); see also Becton, 539 S.E.2d at 553 (affirming summary judgment where large planter over which plaintiff tripped was "several feet long, and contained a corn plant, other greenery, wood chips and several tires" and was prominently placed inside a tire store); Rentz, 797 S.E.2d at 257 (affirming summary judgment where cornhole game over which plaintiff tripped was in an open area of a car dealership and was "readily visible from any angle" and "in plain view with nothing obstructing patrons' view of it").

Based on Georgia's case law, genuine issues of material fact exist as to whether the pallet that caused Jones's injury was so obvious as to be "readily discernible" for purposes of Georgia law.  The defendant's pictures of the pallet after the incident reveal that it was low to the ground, flush on two sides against shelving

7

units filled with boxes of the same color as that of the pallet, and was placed directly behind an opaque door with only a small window. In addition, a shelving unit was perpendicular to the walking path, which meant that from the perspective of someone walking into the dairy section of the store, the pallet extended no more than a couple of feet into the path; and from the perspective of someone walking out of the dairy section, it may well have been obscured entirely by the door. Indeed, as Jones said in her deposition, "I couldn't see a pallet behind the door. I can't see through doors." See Jackson v. Waffle House, Inc., 537 S.E.2d 188, 191 (Ga. Ct. App. 2000) (reversing grant of summary judgment where at "[o]ne angle you can see [the hole that caused plaintiff's fall], one angle you can't").

Of course, the pallet is quite obvious in the pictures Walmart took of it, but that is not the question. The question is whether the record offers "plain [and] palpable" evidence that the danger of tripping over the pallet posed to someone walking through the double doors from the public area of the store would be "obvious" to any visitor exercising ordinary care and walking by it the other way. We simply cannot say that this record is undisputed as to this issue. See Bullard v. Marriott Intern. Inc., 667 S.E.2d 909, 912 (Ga. Ct. App. 2008) (reversing a grant of summary judgment where there were factual questions about whether the plaintiff should have noticed the raised brick in her path over which she tripped).

Moreover, there are genuine disputes of material fact as to whether Jones "successfully traversed" the pallet in walking by it once without her donation pallet in tow. On the one hand, Georgia law is clear that successfully traversing an obstacle even once is sufficient to impute knowledge of its presence to a plaintiff. See Sherrod v. Triple Play Café, LLC, 647 S.E.2d 376, 378 (Ga. Ct. App. 2007). Further, a minor distinction between the prior traversal and the traversal during which the plaintiff was injured, like going down as opposed to up a step, is not sufficient to defeat a holding that the plaintiff had successfully traversed the hazard. See Gantt v. Dave & Buster's of Ga., 610 S.E.2d 116, 118 (2005).

On the other hand, where the second traversal differed significantly from the first and in a way that the hazard the condition posed would not have been evident on the first traversal, Georgia courts have held that the plaintiff had not successfully traversed the condition. See Rutherford v. Revco Discount Drug Centers, Inc., 689 S.E.2d 59, 61 (Ga. Ct. App. 2009) (reversing summary judgment where "going up a ramp is obviously very different from coming down a ramp, so [plaintiff] had not navigated the ramp's decline before her fall."). As in Rutherford, where a Georgia court held that going down a ramp is "obviously" very different from going up, we conclude that walking by a pallet in the ordinary course is "obviously" very different from walking by one while dragging a nearly half-ton load. It is only the former that Jones had done once before. On her first time attempting the latter, she tripped.

9

Moreover, the placement of the pallet in the pictures suggests that navigating it without tripping -- while maneuvering an 800-pound pallet or not -- was a substantially different experience going into the dairy section than it would have been coming back.  From the perspective of someone walking into the dairy section, the pallet was largely obscured by a shelving unit that itself extended into the walking path, and the pallet extended no more than a foot or two beyond the shelving unit.  That is, someone already traversing the shelving unit may well have traversed the pallet incidentally.  But when one returns from the dairy section, one is faced with a pallet immediately past and directly behind one of the doors.

These substantial differences between Jones's first journey past the pallet and her second, and the fact that it plainly posed a much greater tripping hazard the second time -- both because she was pulling her pallet and because she was returning from the dairy section -- demonstrate genuine disputes of material fact about whether Jones successfully traversed the pallet on her journey to retrieve her donations.  Therefore, on the record before us, we hold that the district court erred in granting summary judgment to Walmart under the "prior traversal" rule of Georgia law.

In the alternative, the district court held that Jones was barred from recovering because she was walking backwards as she pulled her donation pallet through the double doors, thereby not exercising reasonable care.  In so doing, the district court acknowledged that the question of whether someone exercised ordinary care is not

10

one particularly amenable to summary adjudication, see Robinson, 493 S.E.2d at 408, but cited cases in which the Georgia courts affirmed summary judgment for the defendant where the plaintiff was injured while walking backwards, see Becton, 539 S.E.2d at 553; Carey v. W.R. Grace & Co., Conn., 472 S.E.2d 524, 526 (Ga. Ct. App. 1996).  These cases are distinguishable from Jones's in two critical respects: (1) they did not involve a situation in which it may have been necessary to walk backwards to generate sufficient momentum to accelerate the 800-pound pallet Jones was pulling; and (2) they both involved plaintiffs who were not looking behind them while they walked backwards, while Jones indisputably was.

Jones testified that she was walking backwards when she tripped because the pallet was so heavy that "you can't walk forward with it."  Video footage from the incident showed that Jones had indeed walked forward with the pallet through the straight aisle of the dairy section, before turning around to maneuver and accelerate the pallet through the double doors.  In light of her testimony, it is possible that it was reasonably necessary for her to turn around in order to generate the momentum necessary to navigate the pallet through the doors.  Moreover, Jones testified that she had walked backwards in order to pull a heavy pallet every day, several times a day, for the three years she worked at Middle Georgia Food Bank and had never tripped or walked into anything.  The record thus raises issues of fact as to whether Jones's walking backwards was a reasonable -- even a necessary -- choice, under the

11

circumstances. The cases cited by the district court are not to the contrary -- in Becton the plaintiff was not carrying anything, see 539 S.E.2d at 553, and in Carey the plaintiff was helping someone carry a heavy piece of metal but there was no allegation that the plaintiff's walking backwards was necessary to exert the force physically required to accelerate the item, see 472 S.E.2d at 526.

Jones also testified that she was looking over her shoulder at where she was walking, primarily to avoid running into anyone. In contrast, in Becton the plaintiff "walk[ed] blindly backward" without looking, 539 S.E.2d at 553, and in Carey the plaintiff looked around before but not while he was walking backwards, 472 S.E. at 525. We have found no cases suggesting that a plaintiff's walking backwards while looking over her shoulder is per se a failure to exercise reasonable care under all circumstances in Georgia.

In short, because there are genuine disputes of material fact about whether Jones's walking backwards was reasonable under the circumstances, we conclude that the district court erred in granting summary judgment to Walmart. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

12