A06A2257. HAYES et al. v. LAKESIDE VILLAGE OWNERS ASSOCIATION, INC.
(640 SE2d 373)

BLACKBURN, Presiding Judge.

In this personal injury action, William and Ruth Hayes appeal the grant of summary judgment to Lakeside Village Owners Association, Inc. ("Association"), contending: (1) that the trial court erred in construing a recorded covenant assigning them a duty to inspect common facilities to be a covenant running with the land enforceable against them; (2) that the trial court erred by misconstruing the covenant; (3) that a material issue of fact remained as to the Hayeses' duty to inspect; (4) that the duty to inspect was unenforceable as they did not sign the writing purporting to impose the duty on them; and (5) that enforcing the covenant violates the public policy of Georgia. For the reasons that follow, we affirm.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Matjoulis v. Integon Gen. Ins. Corp.*[1] So viewed, the record shows that in September 2004, the Hayeses owned a parcel in the Lakeside

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

Village community and were dues-paying members of the Association, which owned and managed common areas in the Lakeside Village community. While using a common area for recreation, William Hayes was seated in a chair when it collapsed, injuring him.

The Hayeses filed a personal injury action against the Association, alleging negligence and gross negligence on the part of the Association for failing to properly maintain the chair, and seeking $5,800,000 in damages. The Association answered and moved for summary judgment, arguing that the Hayeses were bound by a restrictive covenant (recorded and referenced in their deed) assigning them a duty to continuously inspect the common areas and use such facilities at their own risk. The trial court granted the Association's motion, giving rise to this appeal.

1. The Hayeses contend that they were not bound by the covenant because it was a collateral or personal covenant which did not run with the land and bind future assignees, including the Hayeses.[2] We disagree.

> When [a] covenant is of a collateral nature to the land, it is a personal obligation and does not run with the land. . . . In order that it may run with the land, its performance or nonperformance must affect the nature, quality, or value of the property demised, independent of collateral circumstances, or it must effect the mode of enjoyment, and there must be a privity between the contracting parties.

(Punctuation omitted.) *Copelan v. Acree Oil Co.*[3]

However, in *Lowry v. Norris Lake Shores Dev. Corp.*[4] the Supreme Court of Georgia explained that

> [o]ver half a century ago this court noted that [t]here is a growing tendency to incorporate equitable doctrines with common-law rules, and, in equity, covenants relating to land, or its mode of use or enjoyment, are frequently enforced against subsequent grantees with notice, whether named in the instrument or not, and though there is no privity of estate. *It is immaterial in such cases whether the covenant runs with the land or not, the general rule being that it will be enforced according to the intention of the parties. It is only necessary that the covenant concern the land or its use, and that the subsequent grantee has notice of*

---

[2] The Hayeses took title, subject to the covenant, from a grantee of the original developer.

[3] *Copelan v. Acree Oil Co.*, 249 Ga. 276, 277-278 (2) (290 SE2d 94) (1982).

[4] *Lowry v. Norris Lake Shores Dev. Corp.*, 231 Ga. 549, 551 (203 SE2d 171) (1974).

*it*. Covenants are so enforced on the principle of preventing a party having knowledge of the just rights of another from defeating such rights.

(Punctuation omitted; emphasis supplied.) Id. In *Lowry*, the Supreme Court enforced a covenant requiring lot purchasers to "pay . . . for beach privileges, and for the use of other designated recreational facilities[, the use of which] is subject to approval of the user for membership in [the] Country Club . . . and to compliance with the rules and regulations from time to time promulgated by the Grantor." Id. at 550. Despite the appellant's argument to the contrary, the Court concluded that this covenant did bind the appellant as it sufficiently concerned the land or its use. Id.

Here, a similar covenant is in place. The specific provision that the Association seeks to enforce reads as follows:

From the time that the common area, or any portion thereof, is opened and put into use for the enjoyment of parcel owners [i.e., the Hayeses], owner [i.e., the developer] shall be and remain wholly free and clear of any and all liability to, or claims by, all parcel owners, and all persons and entities, of whatever kind or character, whether sounding in contract or tort, deriving from the occurrence of any injury or damage to any person or property on, or in respect of the use and operation of, the common area or any of its improvements, fixtures, and facilities; inasmuch as the control, operation, management, use and enjoyment, of the common area shall be within, under, and subject to the Association — and not owner [developer]. In this respect, *it shall be the affirmative duty and responsibility of each parcel owner, and user of the common area facilities to continuously inspect the same for any defects or perils or other unsafe conditions or circumstances, prior to and during such use or enjoyment thereof; and all users of, and visitors to, the common area and its improvements and facilities shall use, enjoy, and visit, the same at their own risk and peril.*

(Emphasis supplied.)

As stated in *Lowry v. Norris Lake Shores Dev. Corp.*, supra, 231 Ga. at 551, for a covenant to be binding on future successors such as the Hayeses, "[i]t is only necessary that the covenant concern the land or its use, and that the subsequent grantee has notice of it." See also

*Timberstone Homeowner's Assn. v. Summerlin.*[5] It is undisputed that the Hayeses had notice of the covenant through the reference in their deed and the recording of the covenant. Therefore, as with the covenant in *Lowry*, which required users to pay for the use of common facilities and abide by rules governing their use of common facilities and was deemed to "concern the land or its use," id. at 551, we fail to see how the covenant here does not also concern the land or its use. By its terms, the covenant requires parcel owners to pay fees in exchange for their use of the common areas, and outlines conditions under which the common facilities may be used. Accordingly, the trial court did not err in concluding that the covenant is enforceable against the Hayeses.

2. The Hayeses next contend that the trial court erred in construing the covenant to relieve the Association of its duty to inspect the common area and maintain it in a safe condition. We disagree.

Generally, owners of property have a duty to invitees to exercise ordinary care and keep the premises safe. See OCGA § 51-3-1; *Robinson v. Kroger Co.*[6] The Hayeses argue that, if anything, the covenant created a duty on the part of the Hayeses to inspect the premises for their safety, but it did not absolve the Association of its ordinary duty to inspect the common areas and keep them safe. However, such a reading would fail to give effect to the plain meaning of the provision — that the parcel owners shall use the common areas "at their own risk and peril" — which indicates an intention not to merely create a duty parallel to that ordinarily borne by a defendant landowner, but also to shift the duty entirely to the parcel owner using the common area.

The Hayeses also contend that their allegation that the Association was grossly negligent in ignoring the fact that the chair was "several decades old" raises an issue of fact precluding summary judgment. Ordinarily, "[w]hen facts alleged as constituting gross negligence are such that there is room for difference of opinion between reasonable men as to whether or not negligence can be inferred, and if so whether in degree the negligence amounts to gross negligence, the right to draw the inference is within the exclusive province of the jury." (Punctuation omitted.) *Trustees of Trinity College v. Ferris.*[7] However, here, where there was no duty to inspect on the part of the Association, and the Hayeses were bound to use the

---

[5] *Timberstone Homeowner's Assn. v. Summerlin*, 266 Ga. 322, 323-324 (467 SE2d 330) (1996).

[6] *Robinson v. Kroger Co.*, 268 Ga. 735, 740 (1) (493 SE2d 403) (1997).

[7] *Trustees of Trinity College v. Ferris*, 228 Ga. App. 476, 477 (1) (491 SE2d 909) (1997).

common area at their own risk, we fail to see how a higher degree of negligence on the part of the Association can reasonably be inferred.

3. The Hayeses further contend that, if they had a duty to inspect the chair, summary judgment is prevented by issues of fact as to whether they properly carried it out, because any defect in the chair was latent. We disagree.

> To state a cause of action for negligence in Georgia . . . there must be (1) a legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty. Before negligence can be predicated upon a given act, some duty to the individual complaining must be sought and found, the observance of which duty would have averted or avoided the injury or damage. *No matter how innocent the plaintiff may be, he is not entitled to recover unless the defendant did something that it should not have done, or failed to do something that it should have done pursuant to the duty owed the plaintiff.*

(Citations and punctuation omitted; emphasis supplied.) *City of Douglasville v. Queen.*[8] Here, the restrictive covenant relieved the Association of its duty to inspect the common areas and assigned the risk of using the common areas to the parcel owners who used the common areas. Therefore, the Hayeses have not identified a duty owed to them by the Association that the Association has breached.

The Hayeses rely on two cases, *Vaughn v. Pleasent*[9] and *Turner v. Sumter Self Storage Co.*,[10] to argue that they could not have been aware of the defect in the chair, which they argue was not susceptible to discovery by a layperson, and that this therefore creates an issue of fact precluding summary judgment. However, both *Vaughn* and *Turner* address the affirmative defense of assumption of the risk and do not obviate the Hayeses' burden of identifying a duty breached by the Association. Accordingly, this enumeration fails.

4. Next, the Hayeses incorrectly contend that the restrictive covenant is not enforceable against them without their signature. In

---

[8] *City of Douglasville v. Queen*, 270 Ga. 770, 771 (1) (514 SE2d 195) (1999).

[9] *Vaughn v. Pleasent*, 266 Ga. 862 (471 SE2d 866) (1996).

[10] *Turner v. Sumter Self Storage Co.*, 215 Ga. App. 92, 95 (3) (449 SE2d 618) (1994).

so arguing, they rely on *Redding v. Tanner*,[11] a contract case involving a waiver of liability associated with the performance of a home inspection, where this Court reversed a grant of summary judgment that gave effect to the waiver. In so ruling, we concluded that the trial court improperly gave effect to the contractual waiver because the waiver was never signed and the inspection was done pursuant to an oral agreement, the terms of which were disputed. Therefore, issues of fact precluded summary judgment in that case. See id.

*Redding* is distinct and does not control the outcome here. First, the instant case does not involve a contract, but instead involves a covenant, which is not required to be signed by the party to be bound. See *Lowry v. Norris Lake Shores Dev. Corp.*, supra, 231 Ga. at 551. Second, unlike *Redding*, there is no factual dispute here as to the terms of the provision to be enforced. Accordingly, this enumeration is without merit.

5. Finally, the Hayeses contend that the covenant is unenforceable because it violates Georgia public policy. We disagree.

Although here we deal with a restrictive covenant in a deed, the Supreme Court has stated that

> [i]t is well settled that contracts will not be avoided by the courts as against public policy, except where the case is free from doubt and where an injury to the public interest clearly appears. In examining this case we also follow the rule that the courts must exercise extreme caution in declaring a contract void as against public policy and should do so only in cases free from doubt.

(Punctuation omitted.) *Emory Univ. v. Porubiansky*.[12] See *Anderson v. Lynch*[13] (comparing residential restrictive covenants to contracts).

We note at the outset that provisions very similar to the one here have been found not to violate public policy when enforced via contracts. "A contracting party may waive or renounce that which the law has established in his or her favor, when it does not thereby injure others or affect the public interest. Exculpatory clauses in Georgia are valid and binding, and are not void as against public policy when a business relieves itself from its own negligence." (Citation omitted.) *My Fair Lady of Ga. v. Harris*.[14] Therefore, the exculpatory nature of the provision here is not a per se violation of Georgia public policy.

---

[11] *Redding v. Tanner*, 231 Ga. App. 250, 251 (1) (498 SE2d 156) (1998).

[12] *Emory Univ. v. Porubiansky*, 248 Ga. 391, 393 (282 SE2d 903) (1981).

[13] *Anderson v. Lynch*, 188 Ga. 154, 159 (3 SE2d 85) (1939).

[14] *My Fair Lady of Ga. v. Harris*, 185 Ga. App. 459, 460 (364 SE2d 580) (1987).

The Hayeses instead point to OCGA § 44-3-231 (g), a provision in the Georgia Property Owners' Association Act, which provides as follows:

A tort action alleging or founded upon negligence or willful misconduct by any agent or employee of the association or in connection with the conditions of any portion of the instrument which the association has the responsibility to maintain shall be brought against the association. *No lot owner shall be precluded from bringing such an action by virtue of his membership in the association.* A judgment against the association arising from a tort action shall be a lien against the assets of the association.

(Emphasis supplied.) The Hayeses correctly concede that this provision is not binding law here, because the restrictive covenant was recorded before the Act became effective and was not amended to submit the Association to the Act. See OCGA § 44-3-235 (a), (c). Nevertheless, they argue that the provision is a pronouncement by the Georgia General Assembly of the public policy of the state, and we should therefore give it effect here. See *Perdue v. Baker*[15] ("[t]he core legislative function is the establishment of public policy through the enactment of laws").

However, while the General Assembly announced the public policy of this state by enacting the above provision, it also announced that the provision would only be applicable where a recorded declaration affirmatively states (or is amended to state) an election to be governed by the article. See OCGA §§ 44-3-221 (18); 44-3-222; 44-3-235 (a), (c). This reflects a policy of deference toward parties' freedom to contract and to organize their associations accordingly. We cannot say the covenant here, which all parties correctly agree is not subject to OCGA § 44-3-231 (g), violates this policy.

Moreover, the covenant at issue here would not violate OCGA § 44-3-231 (g), if that Code section applied. OCGA § 44-3-231 (g) simply identifies the proper defendant in certain tort claims against homeowners' associations (and protects individual parcel owners) and ensures standing by property owners to bring suit by stating that "[n]o lot owner shall be precluded from bringing such an action by virtue of his membership in the association." Here, nothing in the covenant prevented the Hayeses from bringing their action, and the success of the Association in the trial court did not depend on the Hayeses' standing to sue. Thus, while the covenant did result in the

---

[15] *Perdue v. Baker*, 277 Ga. 1, 14 (6) (586 SE2d 606) (2003).

Association's victory in the trial court, it did not preclude the Hayeses from bringing an action, in violation of OCGA § 44-3-231 (g). Cf. *Bradford Square Condo. Assn. v. Miller.*[16] Accordingly, in light of the statutory scheme at issue here, and in light of the analogous case law, we discern no error.

*Judgment affirmed. Mikell and Adams, JJ., concur.*

DECIDED DECEMBER 13, 2006 — 

*Skelly & Deininger, Richard M. Skelly*, for appellants.
*Carlock, Copeland, Semler & Stair, Frederick M. Valz III*, for appellee.

---

[16] *Bradford Square Condo. Assn. v. Miller*, 258 Ga. App. 240, 249 (573 SE2d 405) (2002). Also, we emphasize that "[w]e were not asked to decide in this case [the Association's] duty toward *non*member/owners." (Emphasis in original.) Id.