## A09A1167. LESSER v. DOUGHTIE et al.
### (686 SE2d 416)

BERNES, Judge.

In this civil action, Gayle Lesser sued appellees, Chris S. Doughtie; James E. Crane; D. Michael Duffey; Bowmac, LLC; and Dodson Creek, LLC, for specific performance or, alternatively, for monetary damages, based upon the breach of a promise to build a fence on the land running between Lesser's property and the property currently or formerly owned by the appellees. Each of the appellees moved for summary judgment and asserted various defenses. In a summary order, the trial court granted the appellees' motions. For the reasons that follow, we affirm the grant of summary judgment as to Doughtie, Crane, and Duffey, but reverse as to Bowmac and Dodson Creek.

> It is well established that on appeal of a grant of summary judgment, the appellate court must determine whether the trial court erred in concluding that no genuine issue of material fact remains and that the party was entitled to judgment as a matter of law. This requires a de novo review of the evidence.

(Citations and punctuation omitted.) *Rubin v. Cello Corp.*, 235 Ga. App. 250, 250-251 (510 SE2d 541) (1998). We will affirm the ruling of the trial court if it is right for any reason. *Nash v. Studdard*, 294 Ga. App. 845, 852 (4) (670 SE2d 508) (2008).

The facts of this case are largely undisputed. Lesser is the owner of several parcels of property located in Fulton County. In March 2002, Forest Creek, Inc. purchased nearly 31 acres of property adjacent to and directly south of Lesser's land for the purpose of developing a subdivision ("the Property"). At that time, appellee Doughtie was the president, one of only two shareholders, and the registered agent of Forest Creek.[1] In preparation for its planned development, Forest Creek filed an application with Fulton County to amend the zoning ordinance governing the Property.

Toward the end of 2002, Forest Creek entered into a contractual agreement with several nearby landowners, including Lesser, which the parties intended to "govern[ ] the development of the Property" (the "Agreement"). In it, the landowners expressly agreed to support Forest Creek's zoning application during any hearings before county officials; agreed not to initiate, support or participate in any litigation challenging the application; and agreed not to attempt to

---

[1] Although Forest Creek was a named defendant in Lesser's complaint, it was in default in the underlying action and is not a party to this appeal.

prevent the development of the Property. In return, Forest Creek committed to develop the Property in conformance with several conditions, which were specifically set forth in Section 2 of the Agreement. The condition at issue in this case provided:

> Forest Creek shall at its sole cost and expense install a vinyl coated, chain link fence, no less than six (6) feet in height, along the north, east and southern property lines at the request of two-thirds (2/3) of the property owners abutting Forest Creek's property line. . . .

The Agreement also set forth the parties' intent that its terms and conditions "shall be binding on the successors, successors-in-title, legal representatives and assigns of Forest Creek . . . and [the landowners], respectively." And significantly, the Agreement made clear that it was meant to create restrictive covenants to the Property:

> It is the intent of the parties hereto that the conditions set forth in Section 2 of this Agreement shall be restrictive covenants to the Property, including any portion thereof in proper form and consistent with the laws and requirements of the State of Georgia for such restrictive covenants (the "Restrictive Covenants"). Any mortgage or security deed now existing or hereafter placed as a lien on the Property or any portion thereof shall be subordinated to the Restrictive Covenants and this Agreement.

In the event of a breach, the Agreement limited the defenses available to the offending party:

> As it is the intention of the parties hereto that the Restrictive Covenants be enforceable by the parties hereto, their respective heirs, successors and assigns, Forest Creek does hereby waive, surrender and forego any defense which might prevent the enforcement of the Restrictive Covenants by . . . any of the [landowners], their respective heirs, successors or assigns, including, but not limited to the following defenses:
>
> > a. Any defense regarding lack of privity;
> > . . .
> > d. Any defense regarding the restrictive covenant being a personal covenant.

And finally, in the event of a breach "by any party, its successors,

successors-in-title, legal representatives or assigns," the Agreement expressly authorized the successful nonbreaching party "to recover reasonable attorneys' fees, legal expenses and other costs and fees."

The text of the Agreement then recited that the parties were "execut[ing] this instrument under seal," and each signatory had the designation "[seal]" following his or her respective signature. Doughtie signed the Agreement as president of Forest Creek and included Forest Creek's corporate seal following his signature.

The Agreement, which included a legal description of the Property, was filed and recorded in December 2002. In November 2003, the requisite number of landowners requested that Forest Creek install a fence around the Property as provided in Section 2 of the Agreement. Forest Creek in turn sent a letter to the landowners dated in January 2004 confirming receipt of the fence request. The letter further provided that during the development of the Property, Forest Creek would install the fence "concurrent with the installation of the chain link fence around the detention facility" and assured the landowners that, "[w]hen installed, the fence will be in accordance with that required in [the Agreement]."

Although Forest Creek had prepared engineering plans and submitted them to Fulton County in order to obtain a land disturbance permit for the development, it sold the Property while the permit application was pending. In January 2005, Forest Creek transferred the undeveloped Property by warranty deed to appellees Crane and Duffey. The warranty deed expressly provided that it was "given subject to all easements and restrictions of record." Approximately two weeks later, in February 2005, Crane and Duffey conveyed the undeveloped Property to Bowmac.[2]

Bowmac ultimately obtained the land disturbance permit and developed the Property into a residential subdivision which included lots, public roads, common areas, an undisturbed buffer, and tree save areas. On February 10, 2006, Lesser observed that Bowmac had commenced building the fence surrounding the detention facility. According to her deposition testimony, on that day she spoke to a representative of Bowmac and forwarded him a copy of the Agreement reflecting the obligation to build the second fence at issue.

The final plat of the development, which had been signed by Bowmac, was recorded in August 2006. Within the zoning conditions reflected on the face of the plat was a notation that, "a vinyl coated, chain link fence no less than six (6) feet in height along the north, east and southern property lines may be allowed in the undisturbed

---

[2] The record does not contain a copy of the deed conveying the Property from Crane and Duffey to Bowmac.

buffer." The fence was never built.

Bowmac conveyed the developed Property to Dodson Creek in September 2006.[3] Lesser filed the instant action in July 2007.

1. *Statute of Limitation.* The appellees each moved for summary judgment on the ground that Lesser filed her complaint outside the applicable statute of limitation. Relying upon OCGA § 9-3-29, the appellees contended that Lesser's suit involved the breach of a restrictive covenant which necessarily had to be filed within two years "after the right of action accrue[d]." OCGA § 9-3-29 (a). They further collectively argued that her cause of action accrued in November 2003, when the landowners made the demand to Forest Creek to build the fence or, at the very latest, in January 2005, when Forest Creek conveyed the Property to Crane and Duffey without first having built the fence.[4] Either way, appellees asserted that Lesser's action, filed in July 2007, was time-barred.

Lesser, on the other hand, contended that, as a sealed document, the Agreement was subject to a 20-year statute of limitation pursuant to OCGA § 9-3-23. Alternatively, she asserted that the statute of limitation did not begin to run until the Agreement was violated, which did not occur until sometime after February 2006, when Bowmac began installing the fence around the detention facility and yet failed to build the fence at issue. Because she filed suit within two years of that date, Lesser contended her action was timely even using the shorter time limitation.

Pretermitting the question of which of the two competing statutes of limitation applies, we conclude that Lesser's complaint was timely filed regardless. Even the two-year limitation set forth in OCGA § 9-3-29 (a) did not begin to run until Lesser's right of action had accrued. "The true test to determine when a cause of action accrues is to ascertain the time when the plaintiff could first have maintained his or her action to a successful result." (Citation and punctuation omitted.) *Colormatch Exteriors v. Hickey*, 275 Ga. 249, 251 (1) (569 SE2d 495) (2002). See *Scully v. First Magnolia Homes*, 279 Ga. 336, 337-338 (1) (614 SE2d 43) (2005); *Tiismann v. Linda Martin Homes Corp.*, 279 Ga. 137, 138 (610 SE2d 68) (2005). In a contract action, a viable claim does not arise until the time of the alleged breach. *Wallace v. Brock*, 279 Ga. 744, 747 (2) (620 SE2d 820) (2005).

Here, the Agreement expressly contemplated that the conditions set forth in Section 2, including the building of the fence at issue,

---

[3] The record does not contain a copy of the deed conveying the Property from Bowmac to Dodson Creek.

[4] Doughtie argued instead that the statute of limitation began to run at the time that the application for the land disturbance permit was submitted in January 2005.

were to take effect during the actual development of the Property. Any attempt by Lesser to compel performance prior to that time would have been both premature and futile. And, more specifically, Forest Creek and the landowners mutually agreed that the fence would be built in conjunction with the fence surrounding the detention facility. Because the Agreement was not breached until the developer of the Property, Bowmac, failed to build the fence at issue in conjunction with the fence around the detention facility, and because the record is uncontroverted that the construction of the detention facility fence did not begin until sometime in February 2006, the applicable statute of limitation did not commence until that time. See *Wallace*, 279 Ga. at 747-478 (2) (the triggering of the statute of limitation was dictated by the parties' agreed upon date of performance); *Engram v. Engram*, 265 Ga. 804, 806-807 (2) (463 SE2d 12) (1995) (appellant's claim had not accrued until appellee refused to honor his alleged promise). Cf. *Canal Ins. Co. v. Pro Search*, 286 Ga. App. 164, 165 (648 SE2d 497) (2007) (when a debt is due upon demand but the parties contemplate a delay in making the demand, the statutory period for bringing the action does not begin until the time of the demand). It follows that Lesser's claim was not barred by any applicable statute of limitation.

2. *Statute of Frauds*. Relying on OCGA § 13-5-30,[5] Crane, Duffey, Bowmac and Dodson Creek also moved for summary judgment on the basis of the statute of frauds, arguing that they were not obligated to build the fence because they were not signatories to the Agreement. Lesser contends that the trial court erred to the extent that its grant of summary judgment to these appellees was based upon their statute of frauds defense. We agree.

The statute of frauds argument fails because Lesser is not seeking to enforce the fence building obligation against these appellees as promisors, but is rather doing so based upon the principle that the appellees are charged as purchasers with notice of a commitment and are therefore subject to that commitment:

> It is presumed that a purchaser has examined every deed and instrument affecting the title. He is charged with notice of every fact shown by the records, and is presumed to know every other fact which an examination suggested by the records would have disclosed. "He who takes with notice of an equity takes subject to that equity." OCGA § 23-1-16.

---

[5] OCGA § 13-5-30 requires that certain obligations must be in writing and signed by the promisor in order to make them binding, including: promises to answer for the debt of another; contracts for the sale of, or any interest in or concerning land; or any agreement that is not to be performed within a year of the date of contract. See OCGA § 13-5-30 (2), (4), (5).

> Equity will enforce a lawful restrictive agreement concerning land against a person who takes with notice of the contract. In such a case, the person violating the agreement, though not a party to it, is a privy in conscience with the maker. . . . It is only necessary that the covenant concern the land or its use, and that the subsequent grantee has notice[,] actual or constructive[,] of it. Covenants are so enforced on the principle of preventing a party having knowledge of the just rights of another from defeating such rights.

(Citations and punctuation omitted.) *Southeast Toyota Distrib. v. Fellton*, 212 Ga. App. 23, 25-26 (2) (440 SE2d 708) (1994). See *Muldawer v. Stribling*, 243 Ga. 673, 675 (256 SE2d 357) (1979); *Langenback v. Mays*, 207 Ga. 156, 158 (2), (3) (60 SE2d 240) (1950); *Hayes v. Lakeside Village Owners Assn.*, 282 Ga. App. 866, 867-869 (1) (640 SE2d 373) (2006).

The Agreement, which contained a legal description of the Property, clearly reflects the signing parties' intent that its terms and conditions remain binding against all successors-in-interest. It is undisputed that the Agreement was recorded and no argument is being made that the fence does not concern the land or its use. It follows that the appellees had at least constructive notice of the restrictive covenants contained therein and are bound by them.[6] See OCGA § 23-1-17 ("Notice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found that such inquiry might have led."); *Timberstone Homeowner's Assn. v. Summerlin*, 266 Ga. 322, 323 (467 SE2d 330) (1996) ("Where a restrictive covenant is recorded, the purchaser is charged with legal notice of the covenant, even if it is not stated in his own deed."). See also *Henson v. Bridges*, 218 Ga. 6, 9 (2) (126 SE2d 226) (1962); *Rosen v. Wolff*, 152 Ga. 578, 583-584 (110 SE 877) (1922); *Hardage v. Lewis*, 199 Ga. App. 632, 633 (405 SE2d 732) (1991). And the fact that the restrictive covenant at issue imposed upon the appellees an affirmative obligation does not change the binding nature of its terms. See *Timberstone Homeowner's Assn.*, 266 Ga. at 323-324; *Hayes*, 282 Ga. App. at 868-869 (1). To the extent that the trial court's grant of summary judgment to Crane, Duffey, Bowmac and Dodson Creek was based upon the statute of frauds, it was erroneous.

3. *Liability of Property Owners Prior to the Breach*. Doughtie,

---

[6] The express reference to the disputed fence on the face of the final plat, which was signed by Bowmac and recorded, is further evidence of this knowledge as to Bowmac and Dodson Creek.

Crane and Duffey further contend that they are entitled to summary judgment on one of two additional grounds. They argue that either they were not liable to Lesser because they did not breach the Agreement (since the breach did not occur until the Property was developed), or they were absolved of liability because any obligation that they may have had to build the fence ceased once they divested themselves of their respective interests in the Property. We agree with both assertions.

First and foremost, as we held in Division 1, Lesser's claim was timely under any applicable statute of limitation because, as contemplated by the Agreement, Lesser's claim did not accrue until the Property was being developed and the Agreement was breached. Bowmac, as a successor-in-interest to these appellees, held title to the Property during the course of its development. It follows that neither Doughtie, Crane, nor Duffey breached any duty to Lesser, nor can they be held liable for any breach that occurred subsequent to their ownership of the Property.

Second, we conclude that Doughtie, Crane and Duffey cannot be liable for a breach of the Agreement that occurred after their ownership interests in the Property ceased. This conclusion is based upon Georgia's well established law that restrictive covenants will be enforced in accordance with the intent of the contracting parties. See *Timberstone Homeowner's Assn.*, 266 Ga. at 323; *Meadows v. Page*, 187 Ga. 686, 690 (1) (1 SE2d 656) (1939); *Rosen*, 152 Ga. at 585; *Hayes*, 282 Ga. App. at 867-868 (1); *Southeast Toyota Distrib.*, 212 Ga. App. at 26 (2); *Reidsville &c. R. Co. v. Baxter*, 13 Ga. App. 357, 362 (79 SE 187) (1913). See also Restatement of Property, § 538 ("Whether a promise respecting the use of land of the promisor will continue to bind the promisor after he has ceased to have an interest in the land with respect to which the promise was made depends upon the intention manifested in the making of the promise.").

The plain language of the recorded Agreement made clear that it was intended to relate directly to the Property and its development, as opposed to impose any personal obligation on any particular party. Its stated purpose was to further the planned development, and the fence commitment was given in exchange for the landowners' collective assurances that they would not in any way interfere with or impede that development. It unequivocally bound all "successors, successors-in-title, legal representatives and assigns," and affirmatively authorized the enforcement of its terms by the same. Under these circumstances, we conclude that the contracting parties did not intend to impose liability on these former Property owners for a breach for which they otherwise were not responsible. Consequently, the trial court did not err by granting summary judgment to

Doughtie,[7] Crane and Duffey.

4. *Impossibility of Performance as to Dodson Creek.* Finally, Dodson Creek contends that its performance has been rendered impossible because the deed from Bowmac conveyed only the residential lots, and excluded the common areas (which were dedicated to the homeowners' association) on which the fence is to be built. Dodson Creek's argument lacks merit. The Declaration of Covenants, Conditions, and Restrictions for the subdivision, recorded in June 2006, expressly reserved the right of Dodson Creek, as successor-in-title to Bowmac, to "erect any type of fence on the [c]ommon [p]roperty or elsewhere within the [subdivision] as they may deem appropriate or as necessary to satisfy the requirements of any law."

For these combined reasons, we affirm the grant of summary judgment to Doughtie, Crane, and Duffey, and reverse the grant of summary judgment to Bowmac and Dodson Creek.

*Judgment affirmed in part and reversed in part. Smith, P. J., and Phipps, J., concur.*

DECIDED NOVEMBER 6, 2009.

*Donald W. Johnson*, for appellant.

*Davidson, Fuller & Sloan, Stephen P. Fuller, Glover & Davis, Peter A. Durham, Beck, Owen & Murray, James R. Fortune, Jr., Carlock, Copeland & Stair, David F. Root, Julia A. Merritt*, for appellees.

---

[7] Our holding in this regard renders it unnecessary for us to address Lesser's assertions regarding improper conduct that might have otherwise rendered Doughtie personally liable for Forest Creek's debts.