A02A1972, A02A1973. BRADFORD SQUARE CONDOMINIUM ASSOCIATION, INC. v. MILLER; and vice versa.
(573 SE2d 405)

ELDRIDGE, Judge.

In this premises liability case, we granted interlocutory review to consider whether the Bradford Square Condominium Association, Inc. ("Condo Association/Association") owed the unit owners/Association members of the Bradford Square Condominiums ("Bradford Square") a legal duty pursuant to OCGA § 51-3-1 to provide security for the common elements of Bradford Square against the criminal acts of third parties.[1] We answer in the negative for the reasons that follow.

---

[5] OCGA § 17-9-41.

[6] *Glover v. State*, 274 Ga. 213, 215 (3) (552 SE2d 804) (2001).

[7] Id.

[1] The Condo Association's assertion on motion for summary judgment that "the Association is not a provider of security and shall have no duty to provide any security," along with its claim that it "did not breach any duty owed to the Plaintiff" raises the issue of whether

Bradford Square consists of 71 separate townhouse units; each unit includes a "percentage of undivided interest in the common area" of Bradford Square. The common elements of Bradford Square "include all parts of the condominium property not located within the boundaries of a unit of the property." The Bradford Square parking lot is one of the common elements.

The Condo Association is the nonprofit representative body of Bradford Square, created by the unit owners solely for their own benefit for the purpose of "insurance, upkeep, repair, maintenance and welfare of the townhouses, buildings and common area" of Bradford Square. Its membership is comprised of each unit owner, who has a single vote per unit as to matters brought before the Association. The Condo Association is governed by a board elected by the members of the Association from among its membership. The Condo Association is regulated and bound by condominium instruments, i.e., a "Declaration of Covenants, Conditions and Restrictions [('Declaration')] and By-Laws," duly recorded and filed with the DeKalb County Clerk of Court. Further, in 1973, Bradford Square amended its Declaration to submit the property to the Georgia Condominium Act, OCGA § 44-3-70 et seq. ("the Act"). Thus, the Condo Association is also governed by the Act.

A review of the Association's By-Laws shows that the governing purpose of the Condo Association is "administering the condominium, establishing the means and methods of collecting the contributions to the common expenses, [and] arranging for the management of the condominium." Thereafter, Article VI, Sections 1-5 of the By-Laws specifically delineate the responsibilities of the Condo Association as (1) to indemnify officers and directors; (2) to purchase and maintain a master insurance policy as a common expense for the maintenance of the condominium property; (3) to repair and reconstruct condominium property as a result of fire or casualty; (4) to maintain architectural standards; and (5) to "maintain and keep in good repair as a common expense roof surfaces, exterior wall surfaces excluding doors and windows, and all of the condominium property not required to be maintained and kept in good order by an owner." The Condo Association self-manages Bradford Square.

Since 1973, the Declaration and By-Laws have been amended several times pursuant to an affirmative vote or written consent of 75 percent of the unit owners/members of the Condo Association. In

---

any legal duty to provide security existed. "It is axiomatic that an action for negligence cannot be maintained if the defendant did not owe the plaintiff a legal duty." *Anderson v. Atlanta Committee for the Olympic Games*, 273 Ga. 113, 118 (5) (537 SE2d 345) (2000).

1990, the Declaration was amended in such manner, and the following express provision was added:

> *Security*. The Association may, from time to time, provide measures of security on the condominium property; however, the Association is not a provider of security and shall have no duty to provide any security on the condominium property. The obligation to provide security lies solely with each unit owner individually. The Association shall not be held liable for any loss or damage by reason of failure to provide adequate security or ineffectiveness of security measures undertaken.

Each owner of a unit at Bradford Square automatically becomes a member of the Condo Association.[2] Each owner agrees to be bound by the provisions contained in the condominium instruments.[3] Any prospective purchaser of a Bradford Square townhouse unit has an absolute right to void a sales contract within a period of seven days after receiving the condominium instruments containing the terms under which the purchaser agrees to be bound by virtue of his purchase.[4] The option, then, would be to agree to be bound by Bradford Square's Declaration and the Condo Association's By-Laws or forgo the purchase of a Bradford Square townhouse unit.

Plaintiff Dolores Miller is a real estate agent. In 1987, the Millers and Mrs. Miller's brother, Robert Graffam, purchased Bradford Square townhouse unit No. 2513 for Mrs. Miller and Mr. Graffam's mother, Julia Graffam; the Millers had a one-half ownership interest in the unit. In 1993, Robert Graffam deeded ninety-five percent of his half interest in the unit to Dolores Miller and five percent interest to their mother, giving the Millers a ninety-five percent ownership interest in the unit. The Millers knew that, as owners, they were members of the Condo Association, and they had received the Declaration and By-Laws of the Association. Over the ensuing years, Dolores Miller, acting as an agent for either buyer or seller, participated in the sale/purchase of several Bradford Square townhouse units and knew that the Declaration and By-Laws were required to be given to every purchaser and that every purchaser agreed to be bound by them.

In 1995, after Dolores Miller's mother had vacated the premises for another residence, the Millers moved into Bradford Square townhouse unit No. 2513. Dolores Miller's mother left with them a

---

[2] OCGA § 44-3-100 (a).
[3] OCGA § 44-3-76.
[4] OCGA § 44-3-111 (b), (c) (1).

packet containing all of the Bradford Square condominium instruments and amendments, to which documents the Millers then had access. Dolores Miller attended at least one Condo Association meeting. The Millers had no expectation that security would be provided by the Condo Association.

In October 1997, the Millers returned to their residence at Bradford Square after an evening out. They parked their 1997 Toyota Avalon in the parking lot and were attacked by three men who, in their own vehicle, had followed the Millers' car into the Bradford Square parking lot from the access street, Shallowford Road. The perpetrators shot Frederick Miller and took the Millers' Toyota. Tragically, Frederick Miller died as a result of the attack. The Toyota was later found burned. All three perpetrators were subsequently apprehended; two pled guilty to related felony charges and are serving life sentences; one pled guilty to armed robbery and is serving seventeen years.

Dolores Miller filed the instant wrongful death action, alleging that the Condo Association was negligent in the performance of its duty to secure the parking lot/common element of Bradford Square from third-party criminal acts.[5] It is Dolores Miller's contention that the installation of security gates and enhanced lighting, institution of security patrols, and the formation of a neighborhood watch would have deterred the attack.

The Condo Association filed a motion for summary judgment, claiming, inter alia, that it had no duty to provide security at Bradford Square. The Superior Court of DeKalb County denied the motion for summary judgment, finding that such duty exists pursuant to OCGA §§ 51-3-1 and 44-3-106 (g). *Held*:

1. (a) OCGA § 51-3-1 sets forth the general duty owed by an occupier of land to invitees:

> Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.

In *Sacker v. Perry Realty Svcs.*,[6] OCGA § 51-3-1 was not expressly cited, but we applied that Code section and held that a condominium unit owner is an "invitee" of a condominium association as to the common elements of the condominium property maintained by the

---

[5] Dolores Miller died testate on April 25, 2002. Pursuant to OCGA § 9-11-25 (a) (1), the executor of her estate, Eric B. Miller, was substituted as a party.

[6] 217 Ga. App. 300 (457 SE2d 208) (1995).

association, and thus, the association has a duty to exercise ordinary care to protect the unit owner from unreasonable risks related to the physical maintenance of the common elements, such as an out-of-place railroad tie utilized as a parking space indicator.[7] In so holding, we implicitly recognized that, through the Act and the condominium instruments, it was the specific responsibility of the condominium association to physically maintain the parking lot/common element of the property, and so the association's duty of care extended to such express responsibility. The instant case requires us to further explore a condominium association's duty of care to its unit owners/members.

When contemplating the composition of a condominium, a problem immediately arises because of an innate duality:

> The question of tort liability with respect to condominiums, particularly as to members thereof, is complicated by the peculiar nature of the condominium, in that a condominium is a creature of various enabling acts and is conceptually a hybrid form of real property ownership which does not fit readily into established common-law categories. . . . More particularly, a condominium project is generally considered a multiunit premises each of whose unit or apartment owner enjoys exclusive ownership of his individual unit or apartment, holding a fee simple title thereto while retaining an undivided interest, as a tenant in common, in common facilities and areas of the building and grounds which are used by all the residents or members of the condominium. Thus, the condominium brings together two distinct tenures, one in severalty and the other in common, both types, although well established separately, are inseparably joined in a condominium. The question of how tort liability will be imposed upon a condominium may well turn upon how the condominium is organized, which may depend upon the enabling acts and the options permitted under such acts.[8]

Under the enabling act in Georgia, OCGA § 44-3-70 et seq., a condominium association is an artificial entity created for the benefit of the unit owners/members thereof. A condominium association's obligations and responsibilities toward the condominium property are dependent upon those allocated to it by the Act and those stated in the condominium instruments, i.e., the declaration and bylaws, as decided by a majority of unit owners/association members.[9]

---

[7] Id. at 301; see OCGA § 44-3-105.

[8] (Footnotes omitted.) 45 ALR3d 1171, § 2.

[9] OCGA §§ 44-3-71 (8); 44-3-106 (a), (d), (f); 44-3-100; see also 15 AmJur2d, Condominiums and Co-operatives, § 1 (characteristic of condominium is agreement among unit owners regulating the administration and maintenance of the property).

Because of this unique interrelationship between a condominium association and the unit owners/members that are, in fact, the association and which define the scope of the association's control, this Court has previously viewed such relationship as a contractual one, and the condominium instruments as analogous to an "express contract" between the unit owners/members and the condominium association.[10] We are not the only jurisdiction to have viewed condominium instruments as asserting binding contractual obligations between a condominium association and the unit owners/association members:

> The condominium instruments, including the bylaws and the sales agreement, are a contract that governs the legal rights between the Association and unit owners. The condominium bylaws represent a form of private law making, in which individual owners come together and agree to subordinate some of their traditional individual ownership rights and privileges when they choose this type of ownership experience. As such, these documents should be strictly construed as they are written, giving the language its clear, simple, and unambiguous meaning.[11]

Notably, and in keeping with this contractual view, the Act states that the power and control of a condominium association may be expressly limited by the terms of the condominium instruments.[12] And any limitation placed upon a condominium association's control of common elements as reflected in the contract between the association and its unit owners/members is not necessarily permanent, but can be altered by a majority of the unit owners through amendment of the condominium instruments.[13]

---

[10] *Sacker v. Perry Realty*, supra at 302; *Hershiser v. Yorkshire Condo. Assn.*, 201 Ga. App. 185, 186 (5) (410 SE2d 455) (1991); see also 13 ALR4th 598, Construction of Contractual or State Regulatory Provisions Respecting Formation, Composition, and Powers of Governing Body of Condominium Association, note 1 (" 'contractual' . . . is meant to have reference to any of the private fundamental documents defining and governing the particular condominium arrangement, such as the original declaration, amendments thereto, and association bylaws").

[11] (Citations and punctuation omitted.) *Johnson v. Fairfax Village Condo. IV Unit Owners Assn.*, 548 A2d 87, 91 (I) (D.C. App. 1988); see also, e.g., *Richardson Lifestyle Assn. v. Houston*, 853 SW2d 796, 800, n. 1 (Tex. App. 1993) ("the condominium bylaws[ ] and the association bylaws are a contract to which all co-owners subscribe and are bound"); accord *Bauer v. Harn*, 223 Va. 31 (286 SE2d 192, 194) (1982); *Hibbert v. Hollywood Park*, 457 A2d 339, 342-343 (Del. 1983); *Pepe v. Whispering Sands Condo. Assn.*, 351 S2d 755, 757 (Fla. App. 1977).

[12] OCGA §§ 44-3-77 (b) (10); 44-3-106 (a).

[13] OCGA § 44-3-93.

Accordingly, a condominium association's duty to its members only pursuant to OCGA § 51-3-1 with regard to the common elements of a condominium property may be circumscribed by the terms of the condominium instruments/contract, and we must look to the terms of the contract, as well as the Act, in order to determine an association's duties. In that regard,

> [i]t is the paramount public policy of this state that courts will not lightly interfere with the freedom of parties to contract. A contracting party may waive or renounce that which the law has established in his or her favor, when it does not thereby injure others or affect the public interest. Exculpatory clauses in Georgia are valid and binding, and are not void as against public policy when a business relieves itself from its own negligence.[14]

With these principles in mind, then, a condominium association exercises a duty to control the common elements of a condominium property only to the extent granted to it through the terms of the condominium instruments and by the Act. Absent conflict with the Act, a condominium association's duty to its members does not require it to do things expressly excluded under the terms of the condominium instruments.

Therefore, the material issue in this case is whether the Condo Association had a duty to control the security of the common elements at Bradford Square. Before we can impose the duty to protect against the criminal acts of third parties, we must find that the defendant has a duty to control the security of the premises where the criminal act took place; if the Condo Association did not have any duty to control the security of the common elements, it cannot have had any duty to provide the same.

At Bradford Square, perhaps because of liability exposure, increasing cost of insurance to be born as a common expense, or for any number of reasons, the unit owners/members of the Condo Association expressly decided by a minium two-thirds majority vote that the Condo Association would not have a duty to provide security for the condominium property and that such obligation would remain

---

[14] (Citations and punctuation omitted.) *My Fair Lady of Ga. v. Harris*, 185 Ga. App. 459, 460 (364 SE2d 580) (1987); *Carswell v. Middle Ga. Pools &c.*, 215 Ga. App. 88, 89-90 (449 SE2d 628) (1994); see also OCGA § 1-3-7 (a person may waive or renounce what the law has established in his favor when he does not thereby injure others or affect the public interest); *Bryan v. MBC Partners, L.P.*, 246 Ga. App. 549, 552 (3) (541 SE2d 124) (2000) (citing OCGA § 1-3-7 and holding, "This ancient rule applies to all the private relations in which persons may place themselves toward each other and includes the waiver of constitutional rights.").

with the unit owners/members individually.[15] Thus, while the Condo Association still has a duty to "maintain" the common elements of Bradford Square under both the Act and the By-Laws, such maintenance specifically does not include providing security. That was the unit owners/members' choice. Bradford Square's Declaration was properly amended, recorded, and filed in order to reflect that choice. And the Condo Association, as well as the unit owners/membership, is bound by the express provision in the Declaration, Section 14, which states,

> the Association is not a provider of security and shall have no duty to provide any security on the condominium property. The obligation to provide security lies solely with each unit owner individually.

The term "condominium property" used in the above provision is not ambiguous; under both the Act (OCGA § 44-3-71 (7)) and the Condo Association's By-Laws, (Art. III, Sec. 5), the term "condominium property" specifically means *all* the property submitted to the Georgia Condominium Act as described in the Declaration, which includes a plat of the entire Bradford Square condominium property.

Moreover, the above provision obviating any duty on the part of the Condo Association to provide security for the common elements of Bradford Square is not in conflict with the Act. Like other statutes which are in derogation of common law, the Georgia Condominium Act must be strictly construed and limited to its explicit terms. In that regard, the Act does not in any fashion speak to providing security from third-party criminal acts as a part of a condominium's "upkeep," meaning "maintenance, repair, renovation, restoration, and replacement."[16] "Where a statute gives a right which did not exist at common law, it must be limited strictly to the meaning of the language employed, and not extended beyond the plain and explicit terms of the statute."[17] Here, the Condo Association performed "maintenance, repair, renovation, restoration, and replacement" at Bradford Square as required by the Act; but, pursuant to an express contractual agreement as reflected in the condominium instruments, providing "maintenance" did not include providing security measures.

---

[15] See 45 ALR3d 1171, § 2 (condominium projects face "the need to protect themselves from possibly great money awards which may be recovered by plaintiffs, seemingly making the viability of many projects dependent upon the taking of adequate steps to protect against such liability").

[16] OCGA §§ 44-3-105; 44-3-106.

[17] (Citations and punctuation omitted.) *Nicholl v. Great A & P Tea Co.*, 238 Ga. App. 30, 39 (2) (517 SE2d 561) (1999).

Clearly, under OCGA § 51-3-1, a condominium association has a duty to exercise ordinary care as to those responsibilities with which it is charged under the condominium instruments and the Act. In that regard, OCGA § 44-3-106 (g) provides that, "A tort action alleging or founded upon negligence . . . in connection with the condition of any portion of the condominium *which the association has the responsibility to maintain* shall be brought against the association."[18] Absent conflict with the Act, however, a condominium association's "responsibility to maintain" may vary from condominium property to condominium property, depending on the private contract between the association and its unit owners/membership, and the terms of that contract will be reflected in the condominium instruments which control the association's obligations to the unit owners/members. It is possible that a condominium association may be charged by its unit owners/membership with the duty to provide security for a condominium property, in which case foreseeability, equal knowledge, assumption of the risk, and ordinary care in the exercise of such duty may be relevant issues. But, here, under the express terms of the condominium instruments as agreed to by the unit owners/members, the Condo Association did not have any duty to control the security of the common elements of Bradford Square. Pretermitting the effectiveness of security gates et al. to prevent the type of crime that occurred in this case, the Condo Association had no duty under the express terms of the condominium instruments to execute such security measures. "If a defendant owes no legal duty to the plaintiff, there is no cause of action in negligence."[19]

We sympathize with Mrs. Miller's loss of her husband and condemn the criminal acts that led to such loss; however, we are constrained to find on the record before us that the trial court erred in denying the Condo Association's motion for summary judgment.

(b) Because the unit owners/Association members specifically contracted that their Condo Association would have no duty to control the security of the common elements at Bradford Square, the Condo Association cannot be found responsible for the maintenance of any alleged continuing nuisance existing on the common elements due to an alleged lack of security. There must be a duty to abate a nuisance before liability may attach.[20]

---

[18] (Emphasis supplied.) OCGA § 44-3-106 (g).

[19] *Dupree v. Keller Indus.*, 199 Ga. App. 138, 141 (1) (404 SE2d 291) (1991).

[20] OCGA § 41-1-5; see, e.g., *Hoffman v. Atlanta Gas Light Co.*, 206 Ga. App. 727, 731 (2) (426 SE2d 387) (1992) ("The principle on which one is charged as a continuing wrongdoer is that he is under a legal duty to terminate the cause of the injury."); *Smail v. Douglas County*, 210 Ga. App. 830, 831 (437 SE2d 824) (1993) (absent duty, no liability for failure to provide protection to woman killed by rock thrown from overpass); see also *Smith v. Branch*, 226 Ga. App. 626, 630 (4) (487 SE2d 35) (1997).

(c) The Condo Association's remaining enumerations of error are rendered moot by the foregoing.

2. Our decision in Division 1, supra, makes moot the cross-appeal in Case No. A02A1973.

*Judgment reversed in Case No. A02A1972. Appeal dismissed as moot in Case No. A02A1973. Smith, P. J., and Ellington, J., concur.*

ON MOTION FOR RECONSIDERATION.

### *Case No. A02A1972*

Appellee has raised two contentions on motion for reconsideration that merit response for clarification's sake.

Citing landlord/tenant and owner/invitee premises liability cases in which OCGA § 51-3-1 was applied, appellee claims that,

> The effect [of the instant opinion] will be to allow other property owners/occupiers to disclaim "security" and cite this case for authority that they have no duty under OCGA § 51-3-1 to keep their premises safe. . . . [T]he disclaimer trap is being created for future unsuspecting invitees, whether they be tenants, guests, shoppers, condominium owners, etc.

We reject appellee's attempt to disregard the clear distinctions and limitations we have carefully drawn in this case based upon the unique interrelationship between a condominium association and the unit owners/members that are, in fact, the association. The Bradford Square condominium owners, of which Mrs. Miller was one, *are* the Bradford Square Condominium Association, and the owners/members may, through the condominium instruments, contractually limit the control and the duties of the Association *solely toward themselves* in a manner that does not conflict with the Act. We were not asked to decide in this case a condominium association's duty toward *non-*members/owners pursuant to OCGA § 51-3-1. And we have already recognized herein an association's duty to its members/owners pursuant to OCGA § 51-3-1 that is also in harmony with the express terms of the condominium instruments and the Act. Moreover, none of the landlord/tenant and owner/invitee premises liability cases cited to us by appellee apply to this case of first impression involving the liability of a condominium association solely toward its members/owners pursuant to the terms of both the condominium instruments and the Act.

We likewise reject the claim that, although the Association may not have a duty to provide "security" to Association members/owners, its duty to provide "safety" under OCGA § 51-3-1 includes safety against the criminal acts of third parties. Regardless of the semantic

distinctions between the terms "safety" and "security" that appellee wishes us to make, we find that when applied to the criminal acts of third parties, "safety"[21] is accomplished through "security"[22] measures, i.e., neighborhood watches, videocameras, fences, patrols, etc.[23] In fact, in the court below, appellee readily referred to protective measures against crime as "security," and appellee's expert witness was prepared to testify at trial as to the efficacy of "security gates" in eliminating third-party criminal acts, such as the one that occurred in this case. To claim now that "[t]here can be safety against crime without 'security' " is factually — and semantically — meaningless. The motion for reconsideration is denied.

*Motion for reconsideration denied.*

DECIDED OCTOBER 8, 2002 —
RECONSIDERATION DENIED NOVEMBER 1, 2002

*Mabry & McClelland, James T. Budd, Brian W. Sprinkle,* for appellant.
*Bauer & Deitch, Gilbert H. Deitch,* for appellee.

---

[21] Safety: "The condition of being safe." American Heritage Dictionary (3rd ed.).

[22] Security: "Measures adopted, as by a business or homeowner, to prevent a crime such as burglary or assault." American Heritage Dictionary (3rd ed.).

[23] See, e.g., *FPI Atlanta v. Seaton,* 240 Ga. App. 880, 886 (524 SE2d 524) (1999) (jury question as to whether lack of security measures showed want of care on part of landlord resulting in third-party criminal act); *Stephens v. Clairmont Center,* 230 Ga. App. 793, 795 (498 SE2d 307) (1998) (under a landlord/defendant's duty to keep premises safe from third-party criminal acts pursuant to OCGA § 51-3-1, plaintiff must show defendant had duty to provide security); *Post Properties v. Doe,* 230 Ga. App. 34, 40 (495 SE2d 573) (1997) (conjecture about wide range of security measures that might have prevented third-party criminal assault on tenant cannot serve to prevent summary judgment in favor of landlord).