**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 11, 2019**

# In the Court of Appeals of Georgia

A18A1841.  SADLOWSKI  v.  BEACON  MANAGEMENT
SERVICES, INC.

DILLARD, Chief Judge.

Eric Sadlowski appeals from the trial court's grant of summary judgment to

Beacon Management Services, Inc., on his action to recover damages for personal

injuries that he sustained in an attack by an unknown assailant near his condominium

complex, which Beacon managed. Sadlowski contends, *inter alia*, that the court erred

by granting summary judgment when there was a genuine issue of material fact as to

whether Beacon had a duty to provide security.[1] For the reasons set forth *infra*, we

affirm.

---

[1] Although Sadlowski also brought suit against the condominium complex's
homeowners' association ("HOA"), he does not challenge that grant of summary
judgment and, thus, the HOA is not a party to this appeal.

Viewed in the light most favorable to Sadlowski (*i.e.*, the nonmoving party),[2] the record shows that at the time relevant to this appeal, he was a new resident in a downtown Atlanta condominium complex, having moved there in February 2014. The declarations for the condominium explained that the complex did not provide, and was not responsible for providing, security to residents. Instead, each resident had responsibility for his or her own safety. Nevertheless, Sadlowski averred that, as part of his decision to purchase his unit, he considered what he deemed security measures surrounding the condominium complex property, including controlled-access vehicle and pedestrian gates.

Sadlowski moved forward with his purchase, but when he closed on his condominium, he did not receive an access-gate key fob from the seller. Instead, he was advised by the seller's real estate agent that the property management company for the complex would provide it to him. Accordingly, both before and during the closing on his unit, Sadlowski's real estate agent contacted Beacon about acquiring an access fob. And Sadlowski was told that he would be provided with a fob no later than a few days after closing. But Sadlowski did not receive a key fob until March 4,

---

[2] *See, e.g.*, *Sherman v. Dickey*, 322 Ga. App. 228, 231 (1) (744 SE2d 408) (2013) ("[W]e apply a *de novo* standard of review and, thus, view the evidence in a light most favorable to the nonmoving party." (footnote omitted)).

2014, approximately two-and-a-half weeks after closing on his unit. At that time, a fob was given to him by the HOA board president.

Immediately after receiving his key fob, Sadlowski attempted to use it to open the vehicle-access gate. But no matter how close he got to the gate, the fob would not open the gate, and Sadlowski then called and left text messages with the HOA president to inform him of the problem. The president did not respond to these inquiries.

Thereafter, Sadlowski reached out to Beacon, the management company, contacting the owner/CEO, president, and accountant by phone and text message on multiple occasions. In his communications with Beacon's CEO, Sadlowski was told that his fob "should be working," even though it had yet to work.

In the midst of attempting to obtain a working key fob, approximately one month after moving into his unit, Sadlowski was violently attacked on the sidewalk just outside of the condominium complex. And at the time of the attack, Sadlowski's name and number still were not entered into the controlled-access gate system, making it impossible for him to call himself through the pedestrian-gate access box to open the gate via his cell phone, and his vehicle-access-gate key fob still did not

work either.[3] Thus, without a way to access the complex through a controlled-access-gate mechanism, Sadlowski was limited to waiting for another resident to drive through the parking gate so that he could follow behind.

The attack on Sadlowski occurred after he and his then-girlfriend arrived home a little after 2:00 a.m. on March 9, 2014, following dinner and drinks with friends. That night, Sadlowski once again attempted to enter the complex through the vehicle-access gate, but his key fob still was not working. As a result, Sadlowski and his girlfriend waited 15 to 20 minutes for another vehicle to enter the gate before growing tired and deciding to park on the street.[4]

Sadlowski exited his Mercedes convertible to assist his girlfriend, who was driving, in parallel parking on the street beside the vehicle-access gate. As he was doing so, while standing on the sidewalk alongside the condominium complex, he was approached from behind by an unknown knife-wielding assailant, who pressed the weapon against Sadlowski's throat and demanded his wallet. Believing the man

---

[3] Sadlowski only acquired access to the complex by either manner two days after the attack.

[4] According to Sadlowski, this was not the first time that he arrived home to the complex at or after 2:00 a.m., but it was the first time he had been unable to follow another vehicle into the parking lot at that hour.

4

ultimately intended to rob him *and* to hijack his Mercedes, which still contained his girlfriend, Sadlowski managed to break free of the perpetrator's headlock, and the two fought. During the struggle that ensued, Sadlowski was stabbed three times—on the arm, in the ribs, and in the back—before the assailant fled and took off in a vehicle parked down the street. Sadlowski's girlfriend called law enforcement for help, and he was then transported to the hospital via ambulance to receive medical attention, including surgery. As a result, he incurred medical costs exceeding $40,000.

Sadlowski filed suit against Beacon in 2015, seeking to recover damages related to allegations of negligence in its provision of security to the complex. But Beacon filed a motion for summary judgment in 2017, denying that it was responsible for providing security. In response, Sadlowski argued that the condominium declarations' disclaimer regarding security measures applied only to the complex HOA, not Beacon, and that Beacon's assumption of security responsibilities modified the declarations anyway. Following a hearing, the trial court granted Beacon's motion for summary judgment. This appeal follows.

Summary judgment is proper when "there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law."[5] And we review a grant or denial of summary judgment *de novo*, viewing all evidence in the light most favorable to the non-moving party.[6] Furthermore, the party opposing summary judgment is "not required to produce evidence demanding judgment for it, but is only required to present evidence that raises a genuine issue of material fact."[7] With these guiding principles in mind, we turn now to Sadlowski's arguments on appeal.

1. Sadlowski argues that the grant of summary judgment was erroneous when there are genuine issues of material fact as to whether Beacon had a *duty* to provide security to the condominium complex. Additionally, in a separate enumeration of error, Sadlowski challenges the trial court's conclusion that Beacon was not providing "security" to the complex *and* had no duty to provide security on a public sidewalk (*i.e.*, the court's conclusion that Sadlowski was not within the approaches of the condominium). We disagree with Sadlowski that Beacon was providing

---

[5] *Navy Fed. Credit Union v. McCrea*, 337 Ga. App. 103, 105 (1) (786 SE2d 707) (2016) (punctuation omitted).

[6] *Id.*

[7] *Montgomery Cnty. v. Hamilton*, 337 Ga. App. 500, 502-03 (788 SE2d 89) (2016) (punctuation omitted).

security to the residents of the condominium complex or had a duty to provide security to the residents.

In bringing his complaint, Sadlowski sought to recover damages under theories of negligence and gross negligence as to Beacon's failure to provide him with a working key fob for the vehicular-access gate to the condominium complex. And it is well established that, in order to state a cause of action for negligence in Georgia, the following elements must be shown:

> (1) [a] legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty.[8]

---

[8] *Bradley Ctr., Inc. v. Wessner*, 250 Ga. 199, 200 (1) (296 SE2d 693) (1982) (punctuation omitted); *accord Schaff v. Snapping Shoals Elec. Membership Corp.*, 330 Ga. App. 161, 163 (1) (767 SE2d 807) (2014); *see Hayes v. Lakeside Home Owners Ass'n, Inc.*, 282 Ga. App. 866, 869-70 (2) (640 SE2d 373) (2006) (holding, in case in which plaintiffs made claims for negligence *and* gross negligence, that when "there was no duty to inspect on the part of the [defendant], and the [plaintiffs] were bound to use the common area at their own risk, we fail to see how a higher degree of negligence on the part of the [defendant] can reasonably be inferred").

In granting summary judgment to Beacon, the trial court concluded that (1) Beacon owed no duty to provide security on a public sidewalk, (2) Sadlowski had equal or superior knowledge that his access fob was inoperable at the time of the incident, and (3) Sadlowski assumed the risk of injury when he decided to physically engage with his attacker. As to the HOA, which again is not a party to this appeal, the trial court granted summary judgment for these same reasons but also for the additional reason that the condominium declarations included a valid and binding exculpatory clause as to the provision of security, relieving the HOA of the duty to provide same.

In Sadlowski's enumerated errors on appeal, he asserts, *inter alia*, that the "trial court erroneously held as a matter of law that Beacon owed no duty to provide security to Eric Sadlowski."[9] But in the argument section of his brief, he abandons this assertion by failing to support it with argument, citation to authority, or citation to the record.[10] Indeed, Sadlowski fails to cite any authority to support the assertion

---

[9] *See* CT. OF APPEALS R. 25 (a) (2) ("Part Two [of Appellant's brief] shall consist of the enumeration of errors and shall contain a statement of jurisdiction as to why this Court, and not the Supreme Court, has jurisdiction. A separately filed enumeration of errors is not required.").

[10] *See* CT. OF APPEALS R. 25 (a) (3) ("Part Three [of Appellant's brief] shall contain the argument and citation of authorities. It shall also include a concise

that Beacon *had* such a duty. And duty, of course, is a threshold element of any negligence claim.[11]

Sadlowski also challenges the trial court's conclusion that Beacon was not providing "security" to the complex and that it had no duty to provide security on a public sidewalk. But setting aside the issue of whether or not the sidewalk was within the condominium's approaches, Sadlowski still was required to demonstrate that Beacon had a *duty* to provide security to the residents.[12] Thus, even if Sadlowski had

---

statement of the applicable standard of review with supporting authority for each issue presented in the brief."); CT. OF APPEALS R. 25 (c) (1) ("The sequence of arguments in the briefs shall follow the order of the enumeration of errors, and shall be numbered accordingly."); CT. OF APPEALS R. 25 (c) (2) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned."); CT. OF APPEALS R. 25 (c) (2) (i) ("Each enumerated error shall be supported in the brief by specific reference to the record or transcript. In the absence of a specific reference, the Court will not search for and may not consider that enumeration."); *see also, e.g.*, *Brown v. State*, 313 Ga. App. 714, 714 (722 SE2d 439) (2012) ("[The] appellate brief wholly failed to support [the] enumerated error as required by our court rules or otherwise to comport with our court rules regarding the structure and content of briefs. Consequently, we deem the claim of error abandoned, and we will not consider it."). Even still, it is not entirely clear from the trial court's order that it *did* conclusively decide that Beacon owed no duty to provide security at the complex as a matter of law.

[11] *See supra* note 8 & accompanying text.

[12] *See Martin v. Six Flags Over Ga. II, L.P.*, 301 Ga. 323, 330 (I) (A) (801 SE2d 24) (2017) ("[A]lthough the landowner's duty is to maintain safety and security within its premises and approaches, liability may arise from a breach of that duty that

supported his argument that Beacon owed a duty to provide *any* security with citation to authority and cogent argument, the "Declaration of Condominium" for the complex explicitly placed the responsibility for each resident's security *solely with the resident.*[13]

To begin with, the Declaration of Condominium was submitted to the governing provisions of the Georgia Condominium Act,[14] which provides that "[e]ach unit owner shall automatically be a member of the [homeowners] association[,]"[15] and

---

proximately causes injuries even if the resulting injury ultimately is completed beyond that territorial sphere.").

[13] Although the trial court appears to have limited its holding to the HOA and to have questioned, at the motion hearing, the viability of such an argument as applied to Beacon, the argument that the exculpatory clause applied to Beacon so as to bar liability was, nevertheless, before the court. And we may affirm the trial court's grant of summary judgment if it was right for any reason when the legal basis for such reason was fairly presented to the trial court. *See, e.g.*, *Cook Pecan Co. v. McDaniel*, 337 Ga. App. 186, 192 (3) (b) (786 SE2d 852) (2016) ("We may affirm the trial court's grant of summary judgment if it is right for any reason, whether stated or unstated, so long as the legal basis was fairly presented in the court below."). *Cf. Georgia-Pacific, LLC v. Fields*, 293 Ga. 499, 503 (2) (748 SE2d 407) (2013) (holding that "right for any reason" rule could not be used to affirm grant of summary judgment when alternative basis relied upon by Court of Appeals had not been raised in the motion for summary judgment).

[14] OCGA § 44-3-70 *et seq.*

[15] OCGA § 44-3-100 (a).

10

unit owners agree to be bound by the provisions of their condominium instruments.[16]

Additionally, under the Act, any purchaser of a unit at Sadlowski's condominium complex "has an absolute right to void a sales contract within a period of seven days after receiving the condominium instruments containing the terms under which the purchaser agrees to be bound by virtue of his purchase."[17] Moreover, as we have previously explained,

> a condominium association is an artificial entity created for the benefit of the unit owners/members thereof. A condominium association's obligations and responsibilities toward the condominium property are dependent upon those allocated to it by the Act and those stated in the

---

[16] *See* OCGA § 44-3-76 ("Every unit owner and all those entitled to occupy a unit shall comply with all lawful provisions of the condominium instruments. In addition, any unit owner and all those entitled to occupy a unit shall comply with any reasonable rules or regulations adopted by the association pursuant to the condominium instruments which have been provided to the unit owners and with the lawful provisions of bylaws of the association."); *Bradford Square Condo. Ass'n v. Miller*, 258 Ga. App. 240, 246 (1) (a) (573 SE2d 405) (2002) ("Each owner agrees to be bound by the provisions contained in the condominium instruments." (citing OCGA § 44-3-76)).

[17] *Miller*, 258 Ga. at 246 (1) (a); *see* OCGA § 44-3-111 (b) ("Any covered contract shall be voidable by the buyer until at least seven days after the seller has furnished to the prospective buyer the documents specified in this subsection."); OCGA § 44-3-111 (c) (1) ("Any covered contract shall be voidable by the buyer until at least seven days after the seller has furnished to the buyer all of the items required to be furnished under this Code section.").

11

condominium instruments, i.e., the declaration and bylaws, as decided by a majority of unit owners/association members.[18]

Finally, it is the paramount public policy of this state that "courts will not lightly interfere with the freedom of parties to contract."[19] And a party to a contract may "waive or renounce that which the law has established in his or her favor, when it does not thereby injure others or affect the public interest."[20] To that end, exculpatory clauses in Georgia are "valid and binding, and are not void as against public policy when a business relieves itself from its own negligence."[21]

Here, Paragraph 19 (a) of the condominium declarations provides in capitalized, bold letters as follows:

> The Association . . . may, but shall not be required to, from time to time, provide measures or take actions which directly or indirectly improve safety on the condominium; however, each owner, for himself or herself and his or her tenants, guests, licensees, and invitees, acknowledges and agrees that . . . the Association . . . is [not] a provider

---

[18] *Miller*, 258 Ga. at 244 (1) (a) (citing OCGA § 44-3-71 (8); OCGA § 44-3-106 (a), (d), (f); OCGA § 44-3-100).

[19] *Id.* at 246 (1) (a) (punctuation omitted).

[20] *Id.* (punctuation omitted).

[21] *Id.* (punctuation omitted).

12

of security and . . . shall [not] have a duty to provide security on the condominium. Furthermore, the Association does not guarantee that non-unit owners and non-occupants will not gain access to the property and commit criminal acts on the property[,] nor does the Association guarantee that criminal acts on the property shall not be committed by other unit owners or occupants. It shall be the responsibility of each owner to protect his or her person and property[,] and all responsibility to provide such security shall lie solely with each unit owner. . . . [T]he Association shall [not] be held liable for any loss or damage by reason or failure to provide adequate security or ineffectiveness of safety measures undertaken.[22]

In addition to this disclaimer, the declarations provide under the HOA's "rights and restrictions" that the HOA has, through its board of directors, the "right and authority" to "control, manage, operate, maintain, improve and replace all portions of the Area of Common Responsibility[.]" And "Area of Common Responsibility" is defined to mean "the Common Elements, together with those areas, if any, which by the terms of the Declaration or by contract or agreement with any other person or

---

[22] (Emphasis omitted). Earlier in this document, "Association" is defined as the complex's homeowners' association, "its successors or assigns." Additionally, "Board" or "Board of Directors" is defined as "the body responsible for management and operation of the Association."

13

entity become the responsibility of the Association."[23] The declarations further delineate that the HOA is responsible for maintenance of the common areas, as follows: "The Association shall maintain and keep in good repair . . . the 'Area of Common Responsibility,' which includes . . . all Common Elements[.]" Elsewhere in the declaration, "Common Elements" is defined to mean "all portions of the Condominium not located within the boundaries of a Unit," and the document further provides that this includes, but is not limited to, *inter alia*, "fences[;] entry feature and lighting for same[;] . . . outside parking area and lighting for same[;] all other lighting, personal property, equipment and furniture in any Common Element of the Condominium buildings[;] and limited access gated entry systems."

It is undisputed that Beacon contracted with the HOA to undertake responsibility for management of the complex and its "Common Elements." Indeed, when Beacon took over management responsibilities for the complex in July 2013, the key-fob entry system at the property was already in existence. Beacon's CEO testified that in its management contract, the company did not have responsibility to provide *security* for condominium occupants or their guests. And although the

---

[23] Under the terms of the declaration, ownership of the Common Elements is by "Unit Owners as tenants-in-common."

14

contract between the HOA and Beacon does not appear in the record, it is undisputed that such a contract exists, and Sadlowski did not challenge this assertion by Beacon's CEO as to contractual responsibility.

Through the then-existing controlled-access system, the complex property was only accessible by one parking gate and one pedestrian gate. Beacon managed the internet-based operational software for the entry system. But it is undisputed that the complex HOA and Beacon shared responsibility for maintenance, repair, and upgrades of the access system from 2013 to 2014, and a third-party vendor was used to repair the activator boxes during that period. Additionally, when new tenants moved to the complex, they would contact Beacon to acquire access to the property via the key-fob system. But Beacon's owner and CEO testified that, at the time of Sadlowski's attack, the HOA board of directors held the extra key fobs for distribution. And indeed, as explained *supra*, Sadlowski's key fob was provided to him by the HOA board president.

Thus, according to this testimony, by way of its contract with the HOA, Beacon took on some of the Association's responsibilities and duties as it related to maintenance of the access-gate system and other items within the condominium's Common Elements. But as made explicitly clear by the terms of the condominium

declarations, this specific access system, and any *other* safety measures, are *not* guarantees of security at the complex, although they may have "directly or indirectly improve safety . . . ." Instead, it is "the responsibility of each owner to protect his or her person and property" and "all responsibility to provide such security [lay] *solely* with each unit owner."

In the trial court below, Sadlowski attempted to circumvent this language in the declaration by suggesting that installation of "security measures" and Beacon's provision of management responsibilities, including its services regarding access gates, somehow modified, or amended, the declarations. But the declarations provide, in relevant part, that,

> [e]xcept where a higher vote is required for action under any other provisions of this Declaration or by the [Georgia Condominium] Act, in which case such higher vote shall be necessary to amend such provision, this Declaration may be amended by the affirmative vote, written consent, or any combination of affirmative vote and written consent of the members of the Association holding two-thirds (2/3) of the total Association vote.

Additionally, "[n]o amendment shall be effective until certified by the President and Secretary of the Association and recorded in the Fulton County, Georgia land

16

records." Suffice it to say, Sadlowski presented no evidence of any such amendment having been made.

As we have previously explained,

[b]efore we can impose the duty to protect against the criminal acts of third parties, we must find that the defendant has a duty to control the security of the premises where the criminal act took place; if the [defendant] did not have any duty to control the security of the common elements, it cannot have had any duty to provide the same.[24]

Here, as made clear by the above-quoted provisions from the condominium declarations, while the HOA still has a duty to "maintain" the Common Elements of the condominium complex, such maintenance specifically does *not* include providing security.[25] We have previously concluded that such clauses are not in conflict with the Georgia Condominium Act.[26] Indeed, a condominium association's duty to its

---

[24] *Miller*, 258 Ga. App. at 246 (1) (1).

[25] *See id.* ("Absent conflict with the Act, a condominium association's duty to its members does not require it to do things expressly excluded under the terms of the condominium instruments.").

[26] *See id.* ("Like other statutes which are in derogation of common law, the Georgia Condominium Act must be strictly construed and limited to its explicit terms. In that regard, the Act does not in any fashion speak to providing security from third-party criminal acts as a part of a condominium's 'upkeep,' meaning 'maintenance, repair, renovation, restoration, and replacement.' [When] a statute

17

members under OCGA § 51-3-1 "with regard to the common elements of a condominium property may be circumscribed by the terms of the condominium instruments/contract[.]"[27]

Although Beacon contracted with the HOA to assist in the provision of the HOA's maintenance duties, this did not give rise to any contractual duty on Beacon's part to provide services on behalf of the HOA that the association had no duty to provide. Thus, setting aside the question of whether a working key fob would have prevented the violent attack on Sadlowski, the HOA "had no duty under the express terms of the condominium instruments to execute such security measures,"[28] and

---

gives a right which did not exist at common law, it must be limited strictly to the meaning of the language employed, and not extended beyond the plain and explicit terms of the statute. Here, the Condo Association performed 'maintenance, repair, renovation, restoration, and replacement' . . . as required by the Act; but, pursuant to an express contractual agreement as reflected in the condominium instruments, providing 'maintenance' did not include providing security measures." (footnotes & punctuation omitted)).

[27] *Id.* at 246 (1) (a); *see* OCGA § 51-3-1 ("Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.").

[28] *Miller*, 258 Ga. App. at 248 (1) (a).

18

Beacon had no such duty either.[29] Instead, the duty to provide for Sadlowski's security lay solely with Sadlowski under the explicit terms of the condominium declarations.[30]

Once again, Sadlowski cites to no source, whether statutory or contractual, giving rise to a duty on behalf of Beacon to provide security. Accordingly, because Beacon had no duty to provide security to Sadlowski, the trial court correctly granted summary judgment to Beacon.[31]

---

[29] *See Scrocca v. Ashwood Condo Ass'n, Inc.*, 326 Ga. App. 226, 227-29 (2) (756 SE2d 308) (2014) (holding that neither HOA *nor* management company with which HOA contracted were liable for unit owner's injuries resulting from a fall on ice in a walkway when condominium declarations included a disclaimer that placed responsibility for ice removal in that specific area with the unit owner herself).

[30] *See id.* (holding that neither HOA *nor* management company with which HOA contracted were liable for unit owner's injuries resulting from a fall on ice in a walkway when condominium declarations included a disclaimer that placed responsibility for ice removal in that specific area with the unit owner herself); *Miller*, 258 Ga. App. at 247-48 (1) (a) (holding that HOA did not have a duty to provide security to unit owner when declarations explicitly provided that "[t]he obligation to provide security lies solely with each unit owner individually").

[31] *See Scrocca*, 326 Ga. App. at 230 ("It is axiomatic that an action for negligence cannot be maintained if the defendant did not owe the plaintiff a legal duty." (punctuation omitted)); *Miller*, 258 Ga. App. at 248 (1) (a) ("If a defendant owes no legal duty to the plaintiff, there is no cause of action in negligence." (punctuation omitted)).

3. Because we hold that summary judgment was properly granted, we need not address Sadlowski's other enumerations of error, which are that the court erred in granting summary judgment to Beacon after concluding that Sadlowski had equal or superior knowledge about the status of his ability to access the condominium through a parking-lot gate, and that Sadlowski assumed the risk of injury when he fought back against his attacker.[32]

For all these reasons, we affirm the trial court's grant of summary judgment to Beacon.

*Judgment affirmed. Doyle, P. J., and Mercier, J., concur.*

---

[32] *See, e.g.*, *N4D, LLC v. Passmore*, 329 Ga. App. 565, 568 (3) (765 SE2d 717) (2014) (declining to address appellant's remaining arguments when grant of summary judgment was appropriate and affirmed on one of many alternative grounds); *Bullington v. Fayette Cnty. School Dist.*, 246 Ga. App. 463, 467 (2) (540 SE2d 664) (2000) (declining to address alternative argument as to the propriety of summary judgment ruling because "[a] judgment right for any reason will be affirmed").