**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be**
**_physically received_ in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 15, 2022**

# In the Court of Appeals of Georgia

A21A1336. VILLAGES OF CASCADE HOMEOWNERS
ASSOCIATION, INC. v. EDWARDS.

REESE, Judge.

We granted the application of the Villages of Cascade Homeowners Association, Inc. ("VCHOA") for interlocutory appeal from the trial court's order denying summary judgment on claims of premises liability and nuisance, and for punitive damages. For the reasons set forth infra, we reverse.

Viewing the evidence in the light most favorable to Herbert Edwards as the non-moving party,[1] the record shows the following. The Villages of Cascade (the "Villages") consisted of approximately 126 townhomes in Atlanta. The owners of the townhomes were also members of a homeowners association, the VCHOA. The

---

[1] See _Yash Solutions v. New York Global Consultants_, 352 Ga. App. 127, 138-139 (2) (834 SE2d 126) (2019).

VCHOA was responsible for, inter alia, maintaining common areas of the property. These maintenance responsibilities included private roads, parking areas, and the vehicle entrance and exit gates. The VCHOA contracted with Community Management Associates, Inc. ("CMA") to manage the property, which included overseeing the day-to-day maintenance of the community.

On September 10, 2015, residents of the Villages noticed that the vehicle exit gate was broken. Lynne Mercedes, Board President of the VCHOA, e-mailed CMA, informing it of the issue and requesting that the gate be repaired. CMA forwarded the e-mail to Timothy Pfeiffer, "gate repairman" for the Villages, approximately one minute later. On September 12, Pfeiffer e-mailed a quote for repairing the gate to CMA and the VCHOA, and the VCHOA provided signed approval that same day. The gate repair was completed at or around the end of September. The repair required additional time as the gate had to be refabricated.

On September 14, 2015, just after midnight, Edwards was returning to the Villages where he rented a room in a townhome from Robert and Constance Shannon, who lived in the unit with Edwards. Although Edwards paid rent to the Shannons, the unit was owned by Judith Bartley.

As Edwards approached the Villages, he noticed two men walking toward the townhome complex. Edwards then entered the complex and parked in a visitor space within the Villages. As he exited his car, the two men ran toward him with guns drawn, and told him to give them everything or they would kill him. After Edwards provided his keys, wallet, and phone to the men, they ordered him on the ground with his hands over his head. Shortly thereafter, one of the men shot Edwards in the left hand. The men then left the Villages through the broken exit gate.

Edwards presented evidence showing that his shooting was not the first criminal activity that had occurred at the Villages. Since 2012, the Villages had experienced incidents of robbery, burglary, trespassing, and vandalism. These crimes were often reported to residents via e-mails entitled "Crime Alert" from the VCHOA Board of Directors.

Edwards sued the VCHOA and CMA asserting claims for negligence, negligence per se, nuisance, and premises liability, and seeking compensatory and punitive damages.[2] The VCHOA and CMA filed motions for summary judgment. The trial court granted CMA's motion for summary judgment in its entirety, and granted

---

[2] Edwards abandoned his claims for negligent entrustment, negligent misrepresentation, negligent hiring, training, supervision and retention, and attorney fees.

VCHOA's motion for summary judgment as to Edwards's claim of negligence per se. However, the court denied VCHOA's motion as to the claims of premise liability, nuisance, and on the issue of punitive damages. We granted VCHOA's application for interlocutory appeal.

"Summary judgment is appropriate when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. In reviewing a trial court's ruling on a motion for summary judgment, we apply a de novo standard of review, and we view the evidence in a light most favorable to the nonmovant."[3] "To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law."[4] With these guiding principles in mind, we now turn to VCHOA's claims of error.

1. VCHOA argues that the trial court erred in denying its motion for summary judgment relating to Edwards's premises liability claim pursuant to OCGA § 51-3-1.

---

[3] *Britt v. Kelly & Picerne, Inc.*, 258 Ga. App. 843 (575 SE2d 732) (2002) (punctuation and footnote omitted).

[4] *St. Mary's Health Care System v. Roach*, 345 Ga. App. 274, 276 (811 SE2d 93) (2018) (citation and punctuation omitted).

Specifically, the VCHOA asserts that the trial court erred, in part, because the VCHOA did not breach any legal duty owed to Edwards. We agree.

As a threshold matter, it is important to note that the VCHOA is not a typical property owner in a landlord-tenant dispute. The VCHOA is composed of the individual homeowners themselves and is governed by the covenants agreed to by each owner upon purchase of a townhome.[5] Its budget is limited to the dues paid by its members. Beyond providing physical maintenance of common areas such as shared landscaping, private roadways, parking areas, and the entrance gates, the duties of the VCHOA outlined in the covenants do not include providing security.

Assuming without deciding that Edwards was an invitee, the standard of care that would be owed by VCHOA was ordinary care, i.e., reasonableness.[6] "Exactly what constitutes 'ordinary care' varies with the circumstances and the magnitude of the danger to be guarded against. . . . But, to be negligent, the conduct must be

---

[5] Homeowners were responsible under the covenants for ensuring that guests, tenants, and occupants complied with all covenant provisions.

[6] See OCGA § 51-3-1; *Sipple v. Newman*, 313 Ga. App. 688, 689-690 (722 SE2d 348) (2012) ("Under Georgia law, an owner of land is liable to the owner's invitees 'for injuries caused by [the owner's] failure to exercise ordinary care in keeping the premises and approaches safe.'") (citing OCGA § 51-3-1).

5

unreasonable in light of the recognizable risk of harm."[7] This means that "[a]lthough a landowner has a duty to invitees to exercise ordinary care to keep its premises safe, the landowner is not an insurer of an invitee's safety."[8]

Here, when the VCHOA was notified of the broken gate, it initiated remedial action the same day and approved an estimate for the repair work two days later; the gate, which needed refabrication, was fully repaired a mere eleven days later. Edwards's injury occurred four days after the gate was broken and only two days after the estimate was approved. These facts are undisputed, and they do not support an inference that VCHOA failed to meet its burden to act reasonably after being notified of the broken gate. There is no evidence that VCHOA could have gotten the repair done before Edwards was attacked, and to hold otherwise would be to put the VCHOA in the role of an insurer of the safety of anyone lawfully on the property. This is contrary to Georgia law and the covenants governing the Villages.

---

[7] *Lau's Corp. v. Haskins*, 261 Ga. 491, 493 (2) (405 SE2d 474) (1991) (citations and punctuation omitted).

[8] *Agnes Scott College v. Clark*, 273 Ga. App. 619, 621 (1) (616 SE2d 468) (2005) (citation omitted).

Thus, the plain and undisputed facts show no conduct by the VCHOA that failed to meet what was required by ordinary care.[9] Put another way, the VCHOA's prompt remedial measures, which resulted in a successful repair, foreclose liability absent some unsupported conjecture that another reasonable course of conduct by the VCHOA would have prevented the crime in this case. But mere conjecture and

---

[9] See *Lau's Corp.*, 261 Ga. at 493 (2) (summary judgment is appropriate in "plain and palpable cases where reasonable minds cannot differ as to the conclusion to be reached[ ]") (punctuation omitted). An expert criminologist hired by CMA testified that the Villages of Cascade "was not a hot spot for violent crime," with no violent crimes in the three years preceding the incident. He further testified that the property did not justify enhanced security measures based on the crime statistics and relevant data, as well as the limited effectiveness of gates preventing violent crime. Finally, he testified that the VCHOA took reasonable measures to repair the gate relative to the situation they were confronted with in having to have the gate refabricated.

possibility are insufficient grounds to avoid summary judgment.[10] Therefore, the trial court erred in denying summary judgment on Edwards's premises liability claim.[11]

2. VCHOA argues that the trial court erred in denying its motion for summary judgment on Edwards's nuisance claim. We agree.

To the extent that Edwards's nuisance claim was predicated on the above conduct, it fails for the same reason.[12] The VCHOA's conduct in repairing the gate did not contribute to a nuisance condition. To the extent that Edwards's claim is

---

[10] See *George v. Hercules Real Estate Svcs.*, 339 Ga. App. 843, 846-847 (1) (a) (795 SE2d 81) (2016) (holding that because there was no evidence that increasing security would have affected the crime rate in general or the particular crime that injured the plaintiff, the evidence was insufficient to create a question of fact on whether the plaintiff's injuries were proximately caused by any act or omission of the defendant); *Walker v. Aderhold Properties*, 303 Ga. App. 710, 714-715 (2) (694 SE2d 119) (2010) ("[A] plaintiff must do more than merely speculate as to whether enhanced security measures would have prevented an attack. This is so because guesses or speculation which raise merely a conjecture or possibility are not sufficient to create even an inference of fact for consideration on summary judgment.") (citation and punctuation omitted); *Johns v. Housing Auth.*, 297 Ga. App. 869, 871-872 (678 SE2d 571) (2009) (same).

[11] See *Lau's Corp.*, 261 Ga. at 491 ("If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial.").

[12] See *Barnes v. Morganton Baptist Assn.*, 306 Ga. App. 755, 759 (2) (c) (703 SE2d 359) (2010) ("As to plaintiff's nuisance claim, it stems from defendants' alleged failure to keep the premises safe and, essentially, constitutes a breach of the same duty to protect [plaintiffs].") (citations and punctuation omitted).

8

based on overall conditions and historical events at the Villages, the record likewise fails to support a finding of a breach of the VCHOA's duty.

"To be liable under a nuisance theory under the facts of this case, [the VCHOA] must have created or maintained a continuous or regularly repeated act or condition on the property, which caused [Edwards's] injury."[13] As stated above, the VCHOA was not a landlord and did not have a duty to address overall security issues beyond the physical maintenance of the common roadways, parking lots, and access gates.[14] The homeowners, in turn, addressed shared security needs by instituting a neighborhood watch, sending regular e-mail updates about crime, and insisting on homeowners' cooperation in maintaining certain standards of conduct. Because the

[13] *Barnes v. St. Stephen's Missionary Baptist Church*, 260 Ga. App. 765, 769 (2) (580 SE2d 587) (2003) (footnote omitted).

[14] Cf. *Sadlowski v. Beacon Mgmt. Svcs.*, 348 Ga. App. 585, 594 (1) (824 SE2d 42) (2019) ("[T]he HOA had no duty under the express terms of the condominium instruments to execute such security measures[.]") (punctuation and footnote omitted); *Demere Landing Condo. Owners Assn. v. Matthews*, 315 Ga. App. 464, 467 (1) (726 SE2d 416) (2012) (physical precedent only) ("[C]ondominium bylaws represent a form of private law making, in which individual owners come together and agree to subordinate some of their traditional individual ownership rights and privileges when they choose this type of ownership experience."). Compare *Ermert v. Wildwood at Meadow Gate Homeowners Assn.*, 354 Ga. App. 656, 658 (840 SE2d 457) (2020) (plaintiff sued homeowners association claiming negligent failure to correct a depression in the common-area ground that was maintained by the homeowners association).

9

covenants governing the VCHOA's responsibilities do not include a duty to control the security of the common elements aside from physical maintenance, the VCHOA "cannot be found responsible for the maintenance of any alleged continuing nuisance existing on the common elements due to an alleged lack of security."[15] Accordingly, the record lacks a triable issue as to VCHOA's liability under a nuisance theory,[16] and the court erred in denying summary judgment as to that claim.

3. The VCHOA argues that the trial court erred in denying summary judgment on the punitive damage claim. The punitive damage claim is derivative of the premises liability and nuisance claims. Therefore, summary judgment was appropriate on the punitive damages claim as well.[17]

*Judgment reversed. Doyle, P. J., and Brown, J., concur.*

---

[15] *Bradford Square Condo. Assn. v. Miller*, 258 Ga. App. 240, 248 (1) (b) (573 SE2d 405) (2002).

[16] The VCHOA argues that Edwards's nuisance claim was premised on failing "to remedy or reduce the danger" and allowing a dangerous environment to continue on the premises unabated does not exist independently of his premises liability claim.

[17] See *George*, 339 Ga. App. at 849 (1) (c) ("A claim for punitive damages is derivative in nature and will not lie in the absence of a finding of compensatory damages on an underlying claim.") (punctuation and footnote omitted).